# EXHIBIT B

**HORN WILLIAMSON LLC**
By:  Matthew H. Dempsey, Esquire
       Thomas P. Stevens, Esquire
Identification. No(s).  312392/60246
Two Penn Center
1500 JFK Boulevard | Suite 1700
Philadelphia, PA 19102
Tel.: (215) 987-3800
mdempsey@hornwilliamson.com                    *Attorneys for Respondent,*
tstevens@hornwilliamson.com                      *Bozzuto Construction Company*

237 KING PARTNERS, LLC, a/k/a 237 EAST
KING PARTNERS, LLC,

                    Claimant,                    **PRIVATE ARBITRATION BEFORE**
                                                   **HON. JAMES F. PROUD**

v.

BOZZUTO CONSTRUCTION COMPANY,

                    Respondent,

v.

DALE WATERPROOFING SYSTEMS, INC.,

                    Additional Respondent.

---

### BOZZUTO CONSTRUCTION COMPANY'S STATEMENT OF JOINDER CLAIM AGAINST DALE WATERPROOFING SYSTEMS, INC.

Respondent, Bozzuto Construction Company ("Bozzuto") through counsel, Horn

Williamson LLC, files the below Statement of Joinder Claim against Additional Respondent,

Dale Waterproofing Systems, Inc., ("Dale"), as follows:

### STATEMENT OF JOINDER CLAIM

1.      Bozzuto, for the purposes of this Joinder Claim only, and without making any

admissions, incorporates by reference all allegations averred in Statement of Claim submitted by

237 King Partners, LLC, a/k/a 237 East King Partners, LLC ("Owner"). A true and correct copy of Claimant's Statement of Claim is attached hereto and marked as Exhibit "A."

2.      This dispute arises out of written construction contract entered into on or about February 24, 2012 (the "Contract") between Owner and Bozzuto for the construction of the Eastside Flats apartment complex (the "Project"), located at 237 East King Street, Malvern, Pennsylvania 19355 (the "Property").  *See* Exhibit "A," at pg. 1.

3.      In its Statement of Claim, Owner alleges Bozzuto breached the Contract by failing to construct the Project in accordance with the plans and specifications for the Project. *See* Exhibit "A," at 3.

4.      The Statement of Claim asserts, among other things, that damages were caused by the failure to properly install an appropriate waterproofing membrane in accordance with the plans and specifications and manufacturer's instructions.  *See* Exhibit "A," at 3.

5.      In connection with the Project, Bozzuto entered into a Subcontract Agreement with Dale dated July 31, 2012 (the "Subcontract"). A true and correct copy of the Subcontract is attached hereto and marked as Exhibit "B."

6.      Under the Subcontract, Dale's scope of work included installation of the waterproofing membrane for the Project.  *See* Exhibit "B."

7.       Under the Subcontract, Dale agreed to join as a party in any proceeding relating to its scope of work:

> In event of a dispute between Contractor and Owner involving in any way the work of subcontractor and if such dispute results in a proceeding, to which Subcontractor may become a party, then Subcontractor will join in such proceeding and will be bound by the result thereof.

*See* Exhibit B at pg. 3 of 11, Article 5(b).

## BREACH OF SUBCONTRACT
### Bozzuto v. Dale

8.      Bozzuto incorporates the foregoing paragraphs 1 through 7 as well as all allegations contained in Owner's Statement of Claims, and without admitting the allegations contained therein, asserts those allegations against Dale.

9.      Bozzuto performed its obligations under the Subcontract.

10.      To the extent there are defects in construction at the Project as alleged in the Statement of Claim, such defects were caused by Dale's failure to properly perform its scope of work under the Subcontract.

11.     To the extent Owner suffered damages, such damages were caused in whole or in part by Dale's breach of the Subcontract.

WHEREFORE, Bozzuto Construction Company, respectfully requests an award in its favor and against Dale Waterproofing Inc. for all damages available under the Subcontract including but not limited to Attorneys fees pursuant to Article 24 of the Subcontract.

## CONTRIBUTION AND INDEMNIFICATION
### Bozzuto v. Dale

12.     Bozzuto incorporates the foregoing paragraphs 1 through 11 as well as all allegations contained in Owner's Statement of Claims, and without admitting the allegations contained therein, asserts those allegations against Dale.

13.     If the allegations in Owner's Statement of Claims are proven to be true, said allegations being specifically denied, then Bozzuto alleges Dale is solely liable to the Owner on Owner's claims, or in the alternative, Dale is jointly and severally liable with Bozzuto to Owner, or liable over to Bozzuto for contribution and indemnification to the fullest extent of any liability which may be imposed on Bozzuto.

WHEREFORE, Bozzuto Construction Company, respectfully requests an award in its favor and against Dale Waterproofing Inc..


**HORN WILLIAMSON LLC**


 */s/ Matthew H. Dempsey*_____

Dated:  September 9, 2022                    Matthew H. Dempsey, Esquire
*Attorneys for Respondent,*
*Bozzuto Construction Company*

# EXHIBIT A

**COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, P.C.**
By:  Lane F. Kelman, Esquire
        Cody M. Wolpert, Esquire
PA Attorney ID Nos. 75723/325954
1600 Market Street, 32nd Floor
Philadelphia, PA  19103
(215) 564-1700

*Attorneys for Claimant,*
*237 King Partners, LLC*
*a/k/a 237 East King Partners, LLC*

|  |  |  |
|---|---|---|
| **237 KING PARTNERS, LLC, a/k/a 237 EAST KING PARTNERS, LLC.** | : | |
| | : | |
| | : | |
| *Claimant*, | : | **ARBITRATION** |
| | : | |
| v. | : | **before** |
| | : | |
| **BOZZUTO CONSTRUCTION COMPANY,** | : | **The Honorable James F. Proud** |
| | : | |
| *Respondent*. | : | |
| | : | |

<u>**STATEMENT OF CLAIM**</u>

Claimant, 237 King Partners, LLC, a/k/a 237 East King Partners, LLC ("Owner"), by and

through its undersigned counsel, Cohen Seglias Pallas Greenhall & Furman P.C., and pursuant to

the Scheduling Order entered in this Arbitration, hereby files this Statement of Claim and states as

follows:

**I.    Introduction**

In this Arbitration, Owner seeks recovery in excess of $3,800,000.00 for damages suffered

from the failure of Respondent, Bozzuto Construction Company ("Bozzuto"), to construct the

Eastside Flats apartment complex in accordance with the parties' contract. Bozzuto's failures

include but are not limited to improper installation of the waterproofing membrane on each of the

three rooftop terraces at the complex, use of improper materials, and the failure to install two-stage

drains in accordance with the project plans and specifications. As a result of Bozzuto's actions and

inactions, Owner has been forced to contend with water intrusion throughout the property and has suffered damage to the property. Further, Owner has been forced to expend significant time and resources to investigate and remedy the damage, and will continue to incur expenses as it completes the necessary remedial work.

## II.    Factual Background

This matter arises from a construction contract entered into on or about February 24, 2012 (the "Contract") between Owner and Bozzuto for the construction of the Eastside Flats apartment complex (the "Project"), located at 237 East King Street, Malvern, Pennsylvania 19355 (the "Property"). The Project involved the construction of a four-story mixed-use complex comprising of two independent structures that include 190 apartment units over approximately 30,000 square feet of retail space, a two-story parking garage, and three elevated terrace courtyards. Bozzuto was the general contractor for the Project. The Contract required Bozzuto to perform its work at the Project in accordance with the Contract documents—including the plans and specifications.

The plans and specifications required Bozzuto to properly install an appropriate waterproofing membrane in accordance with the manufacturer's instructions. The plans and specifications also required Bozzuto to install two-stage drains throughout each of the three terraces.

Bozzuto failed to perform its work in a workmanlike manner and in accordance with the plans and specifications. As a result, Owner began to experience water intrusion into both buildings that was capable of being observed with the naked eye. The water intrusion continues to this day. The water intrusion flows from the three exterior terrace-courtyard common areas and has caused damage to several portions of the Project including but not limited to the parking garage

structure. Owner has been forced to incur and will continue to incur significant expenses to investigate and remediate Bozzuto's defective work.

## III.    Claim and Damages

Bozzuto materially breached the parties' Contract by failing to construct the Project in accordance with the plans, specifications, and manufacturers' instructions.[1] Bozzuto's failures and nonconforming work include but are not limited to the following:

- Failure to install two-stage drains as required by the Contract documents, resulting in active leaks at the Property.

- Failure to properly install an appropriate waterproofing membrane in accordance with the plans and specifications and manufacturer's instructions, resulting in:

    o voids and moisture trapped below the membrane;

    o adhesive failure of the membrane at vertical wall terminations;

    o residual water behind brick base of building exterior; and

    o water intrusion into the parking garage structure.

- Failure to perform the proper repairs on the defective waterproofing and installation— creating additional construction failures and additional expense to Owner.

- Improper installation of poured concrete over drains in the structural concrete slab.

Upon discovery of the construction defects, demand was made upon Bozzuto by Owner to correct and cure the defects; however, Bozzuto failed to do so. The water intrusion has resulted in degraded conditions both on the terrace decks themselves and in the parking garage below. Additionally, the water intrusion has resulted in complaints and leasing issues with residents of

---

[1] Owner also asserts, in the alternative, quasi-contract theories (unjust enrichment, quantum meruit, etc.) entitling it to recovery of the same damages.

the complex for loss of use of balconies, the terrace areas, and parking. As of the date of this statement, Owner has incurred consultant costs in the amount of $43,191.49, which continue to accrue, and costs to reimburse residents for damages to their vehicles of at least $6,080.81. In addition, it is estimated that Owner will incur costs in the amount of at least $3,788,412.00 to complete the remedial work.[2]

Because Bozzuto failed to construct the Project in accordance with the Contract documents, and failed to correct its defective work despite Owner providing notice and opportunity to cure, Owner is entitled to recover the above damages pursuant to the Contract. Owner reserves the right to amend and/or supplement this Statement as additional information becomes available to it through the course of discovery.

## IV.    Relief

For the reasons set forth above, Owner respectfully requests an award in its favor in the amount of at least $3,837,684.30. Owner reserves all rights and remedies available to it, including but not limited to supplementation of its damages demand.

Respectfully submitted,

**COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC**

BY:      /s/ Lane F. Kelman
Lane F. Kelman, Esquire
Cody M. Wolpert, Esquire
*Attorneys for Claimant*

Dated: June 23, 2022

---

[2] As of the date of this Statement, remedial work at the Project is ongoing, and the sum of Owner's costs incurred to complete the remedial work is subject to change.

## **CERTIFICATE OF SERVICE**

I, Lane F. Kelman, Esquire, hereby certify that on June 23, 2022, I caused a true and correct

copy of the foregoing *Statement of Claim* to be served upon the following via electronic mail:

Matthew H. Dempsey
Thomas P. Stevens
Horn Williamson LLC
2 Penn Center, Suite 1700
1500 JFK Boulevard
Philadelphia, PA 19102
mdempsey@hornwilliamson.com
tstevens@hornwilliamson.com
*Attorneys for Respondent*
*Bozzuto Construction Company*


**COHEN SEGLIAS PALLAS**
**GREENHALL & FURMAN, PC**


BY:    /s/ Lane F. Kelman
           Lane F. Kelman, Esquire

# EXHIBIT B

CONTRACT NO. **1154-026**
CC: PROJECT #- 1154-07140 /FIELD/ACCTG
VERSION 277261 V5 BCC FORM 006103-0000 UPDATED 5/15/06

BOND REQUIRED: <u>Yes</u>

# SUBCONTRACT AGREEMENT

THIS AGREEMENT, made and entered into this **31st day of July, 2012**  by and between

**Bozzuto Construction Company**
**740 Springdale Dr., Suite 130**
**Exton, PA 19341**
**Attn:  David Byzek, Project Manager**
**(484) 875-9056**

(hereinafter called the "Contractor") and

**Dale Waterproofing Systems, Inc.**
**1155 Phoenixville Pike**
**Suite 113**
**West Chester, PA   19380**
**610-429-0460**
**Attn: Joe Gahagan**

(hereinafter called "Subcontractor") for work to be performed at

**Malvern East King Street**
**237 East King Street**
**Malvern, PA 19355**
**Attn: Larry Moser, Superintendent**
**240-765-2169**

(hereinafter referred to as the "Project").

Contractor and Subcontractor covenant and agree as follows:

## ARTICLE 1.  SCOPE OF WORK

a.   Subcontractor agrees to perform and furnish all the work, labor, materials, as herein specified, and plant, equipment, tools, scaffolds, hoists, and everything of sort for accomplishing the work (hereinafter called the "Work") as described in the attached Exhibit 2, "Scope of Work".

b.   Subcontractor represents that it is fully qualified to perform this Agreement.  Subcontractor hereby agrees that the Work will be performed in strict accordance with the Contract Documents as hereinafter defined in Article 2 and any Work not conforming to this Agreement's requirements, including substitutions not properly approved, may be considered defective.  Subcontractor agrees to perform the Work to the full satisfaction of Contractor, the Inspecting Architect, and the Owner.  Subcontractor shall commence the Work immediately when notified by Contractor and shall prosecute said Work in a good and workmanlike manner with due diligence and without delay.  The Subcontractor shall immediately repair or replace all defective Work upon discovery or notification by the Contractor.  The Contractor reserves the right to have any portion of the Work, which the Subcontractor has not been directed to proceed with or has not begun, accomplished by his own forces or by others.

c.   Subcontractor shall assume all obligations, risks and responsibilities, which the Contractor has assumed with respect to the Owner in accordance with the Contract Documents.  Subcontractor shall have the right to enforce its rights and remedies and to defend against claims against it by the Owner as provided herein.

d.   This agreement is fully inclusive and shall not be affected by any changes in labor rates, transportation charges, costs of materials, etc., and the Subcontractor agrees that the price includes all taxes that he shall incur as a result of his prosecuting the Work.

RECEIVED

AUG 2 4 2012

BOZZUTO CONSTRUCTION CO.

**EXHIBIT 8**

SUBCONTRACTOR: Dale Waterproofing Systems, Inc.
PROJECT: Malvern East King Street
CONTRACT # 1154-026
DATE: 7/31/2012

## ARTICLE 2.  CONTRACT DOCUMENTS

a.   The Contract Documents for this Subcontract shall consist of this AGREEMENT and the EXHIBITS:
     Exhibit 1 – List of Contract Documents included in this Agreement
     Exhibit 2 – Scope of Work
     Exhibit 3 – General Requirements for Subcontractors/Vendors
     Exhibit 4 – Payment Schedule
     Exhibit 5 – Insurance Requirements
     Exhibit 6 – Tax Payer Identification Number
     Exhibit 7 – Acknowledgement of Payment and Settlement Date
     Exhibit 8 – Payment & Performance Bond (if applicable)

The Contract Documents also include the contract between Contractor and Owner which contract is incorporated by reference, as set forth in Article 5 herein, and any subsequent amendment to any Contract Document.

b.   Subcontractor represents and agrees that prior to the execution of this Agreement, it has (a) by its own independent investigation ascertained (i) the work required by this Agreement and the Contract Documents, (ii) the conditions involved in performing the work, and (iii) the obligations of this Agreement and the Contract Documents; and (b) verified all information furnished by the Contractor or others satisfying itself as to the correctness and accuracy of that information,  No allowance in the form of additional compensation is to be made by reason of any error on the part of Subcontractor with respect to such matters, nor will Subcontractor be relieved from its responsibilities hereunder by its failure to properly investigate.  This Subcontractor Agreement and Exhibits attached hereto shall constitute the complete contract and all prior negotiations, prior commitments and prior agreements whether oral or written are superceded hereby.  This Agreement may only be amended by a writing, including a change order issued by the Contractor and signed by both parties.

## ARTICLE 3.  CONTRACT SUM AND PAYMENT PROCEDURES

a.   The Contractor agrees to pay to the Subcontractor for the satisfactory performance and completion of the Work and of all the duties, obligations and responsibilities of Subcontractor under this Agreement the Sum of **THREE HUNDRED FIVE THOUSAND AND 00/100 DOLLARS, ($305,000.00)** hereinafter, the Subcontract Amount.

b.   Partial payments will be made monthly on approximately the twenty fifty (25th) day of each month following receipt of payment by the Contractor from the Owner for Work completed by this Subcontractor during the previous month, provided the Subcontractor shall have submitted its request for payment on or before the **20th** day of such previous month.  Partial payments shall be due to the Subcontractor in the amount of ninety percent (90%) of the work in place which has been approved by the Contractor, Owner, the Owner's Lender and Inspecting Architect and for which payment has been made to the Contractor by the Owner.  All payments will be made per the Payment Schedule attached hereto as Exhibit "4"  and made a part hereof. A request for payment for an item noted in the Payment Schedule may only be made by the Subcontractor upon completion of that item to the satisfaction of the Contractor, Inspecting Architect and Owner.

c.   All invoices shall be supported to the extent required by the Contractor by affidavits, or other evidence satisfactory to Contractor, showing that all labor and material bills, taxes and all other indebtedness incurred by the Subcontractor for the Project up to and including the date of invoicing have been paid in full.  The Contractor may at its sole discretion withhold payments due the Subcontractor until satisfactory evidence of payment of all the Subcontractor's obligations has been accomplished.  A Partial Waiver of Lien and Subcontractor's Affidavit shall be provided with each request for payment, including the current request for payment, and a Final Waiver of Lien and Subcontractor's Affidavit shall be submitted with request for final payment.  All Waivers of Lien and Subcontractor's Affidavits shall be in a format acceptable to the Contractor.

d.   No payment (final or otherwise) made under or in connection with this Agreement shall be conclusive evidence of the performance of the Work or of this Agreement, in whole or in part, and no such payment shall be construed to be an acceptance of defective, faulty or improper work or materials nor shall it release Subcontractor from any of its obligations under this Agreement; nor shall entrance and use by the Owner constitute acceptance of the Work or any part thereof.

e.   Anything herein contained to the contrary notwithstanding, the Contractor reserves the right, at its sole discretion and without any fault or breach by Subcontractor, to make any payments directly to laborers, materialmen, subcontractors, sub-subcontractors, or any subcontractors or materialmen of any of them, for or on account of work performed or materials furnished under this Agreement.  If such payments are made in good faith and upon reasonable evidence of their validity, the Contractor shall have no liability to Subcontractor in connection therewith and shall deduct such payments from any balance owed to the Subcontractor.



f.   Subcontractor shall, prior to the submission of the first request for payment, supply Contractor with the names, addresses and telephone numbers of all suppliers furnishing or to furnish materials for the Work covered hereby.  No payment shall be made to Subcontractor until such information is furnished.  Contractor reserves the right and is hereby authorized by Subcontractor to make all payment checks jointly payable to Subcontractor and material suppliers of Subcontractor.

g.   All material and work incorporated into the Project or for which partial payment has been made shall become the property of the Contractor or, if the Contract Documents so provide, the property of the Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all work and materials upon which payments have been made until final acceptance thereof by the Owner.

h.   The Contractor may withhold amounts otherwise due under this Agreement or any other agreement between the parties to cover the Contractor's reasonable estimate of any costs or liability the Contractor has incurred or may incur for which Subcontractor may be responsible under this Agreement or any other agreement between the parties.   For purposes of this paragraph, the phrase "any other agreement between the parties" shall be deemed to include any agreement between Subcontractor and the Contractor or any joint venture or other entity in which the Contractor has an ownership interest.  Appropriate adjustments to the withheld sums shall be made when the exact amounts owed are determined.

i.   Final payment, subject to withholdings permitted hereunder, shall not be due until after the last of the following to occur: (a) Subcontractor's work has been completed and approved by the Owner and the Inspecting Architect, (b) the entire Project is complete, (c) all final payment prerequisites under the Contract Documents have been satisfied, (d) satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Agreement has been provided, and (e) the Contractor has been paid in full for the entire Project.

## ARTICLE 4.  LIEN RIGHT

a.   Subcontractor acknowledges that no lien shall attach to the Project real estate by virtue of any work done hereunder by the Subcontractor or by any suppliers, employees, materialmen, or others subcontractors employed by him if the Subcontractor is paid to date in accordance with this Agreement for work accepted and approved; and the Subcontractor warrants that all such parties shall be advised of the same and shall certify to the Contractor that they are aware thereof and bound thereby.

b.   Subcontractor will immediately discharge or cause to be discharged all liens, claims or attachments which may be filed in connection with the Work and will hold Contractor harmless therefrom if Subcontractor is paid to date for work accepted and approved.  Failure to comply with the requirements of this Article within a period of seven (7) days after receipt of written notice from the Contractor of any lien, claim or attachment that may have been filed in connection with the Work shall place the Subcontractor in default and entitle the Contractor to exercise any of its remedies, including the right to terminate this Agreement in accordance with the provisions of Article 13.

c.   In the event that the Subcontractor fails to pay and discharge when due, any bills or obligations of any kind or nature whatsoever incurred by the said Subcontractor by reason of or in the fulfillment of this Agreement, whether or not a lien or notice of lien has been or may be filed with respect thereto, which bills or obligations in the opinion of Contractor are proper, the Contractor, at its sole option but without being obligated to do so, may pay all or any part of such bills or obligations.  The Subcontractor hereby appoints the Contractor as agent and attorney-in-fact of the Subcontractor for the purpose of payment and discharging such bills and obligations, and the Contractor may deduct the amount of such bills as well as any expenses incurred in the payment of same, including interest, court costs and attorney's fees, from any sums due or to become due to the Subcontractor.  The Subcontractor hereby expressly waives any right of redress or recovery against the Contractor by reason of any act or omission of the Contractor while acting as such agent and attorney-in-fact of the Subcontractor.

## ARTICLE 5.  SUBCONTRACTOR BOUND BY OWNER/CONTRACTOR AGREEMENT

a.   In respect to the Work covered by this Agreement, the Subcontractor shall be bound to the Contractor by the terms of this Agreement and the contract between the Owner and Contractor, and shall assume toward the Contractor all the obligations, risk and responsibilities which the Contractor, by that contract, assumes toward the Owner, provided that where any provision of those contract documents between the Owner and Contractor is inconsistent with any provision of this Agreement, this Agreement shall govern.

b.   In event of a dispute between Contractor and Owner involving in any way the work of Subcontractor and if such dispute results in a proceeding, to which Subcontractor may become a party, then Subcontractor will join in such proceeding and will be bound by the result thereof.





## ARTICLE 6.  TIME IS OF THE ESSENCE

a.   Time is of the essence in the performance of the Work referred to in the Contract Documents, inasmuch as failure of the Subcontractor to commence and complete its Work as and when required by the Contractor may cause grave injury and damage to the Contractor by virtue of increased costs for construction financing, loss of interest on invested funds, loss of sales and good will, delayed receipt of income from rental units, extension of overhead costs and otherwise.  Accordingly, the Subcontractor shall be prepared to commence Work within seven (7) days after receipt of notice from the Contractor to do so and will thereafter actually commence Work when and as required to do so by the Contractor. Such notice shall be given as the Project reaches the stage of construction, in accordance with the plans and specifications, where the Subcontractor's services are to be used, or at such earlier date as set forth in any supplement hereto.  The Subcontractor further agrees to prosecute the Work with due diligence and will not in any manner delay or otherwise interfere with the work of the Contractor or other subcontractors.

b.   Subcontractor agrees to conform with the progress schedule, which the Contractor shall issue.  This schedule shall allow the Subcontractor adequate time to complete his Work and, unless the Contractor is notified otherwise by the Subcontractor in writing within five (5) days of the receipt of the schedule, it shall be binding on the Subcontractor.  The Contractor reserves the right to amend the progress schedule from time to time as the overall progress of the Project dictates, and the Subcontractor hereby discharges the Contractor from any liability incurred on account of such changes.

c.   If, however, the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of the Subcontractor, then the Subcontractor shall, in addition to all of the other obligations imposed by this Agreement upon the Subcontractor and at its own cost and expense, work such overtime as may be necessary, in the opinion of the Contractor, to make up for all time lost and take all necessary measures to avoid delay in the completion of the Work and of the Project, and, in any case, Subcontractor shall be responsible for all loss, costs and damages incurred by the Contractor as a result of such delay, including but not limited to all delay damages assessed against the Contractor by the Owner.

d.   Subcontractor will coordinate its work with the work of the Contractor, other subcontractors, and the Owner's other contractors, if any, so no delays or interference will occur in completion of any part or all of the Project.

e.   Subcontractor may be entitled to additional compensation for compliance with schedule amendments or to damages for delay but only to the extent that the contract documents between the Owner and Contractor entitle the Contractor to damages or to a contract adjustment increasing the price or Guaranteed Maximum Cost of the contract between the Contractor and Owner.

f.   The extent to which the Contractor provides temporary heat and temporary enclosures shall be at the sole discretion of the Contractor and shall be based upon general overall job progress, and the Subcontractor understands that the Project and Subcontract Amount are based upon this condition.

## ARTICLE 7.  CHANGE ORDERS AND FIELD WORK ORDERS

a.   The Contractor may, at any time, unilaterally or by agreement with Subcontractor, without notice to the sureties, make changes in the Work covered by the Contract Documents.  Any unilateral order or agreement under this Article 7 shall be in writing.  Subcontractor shall perform the work as changed without delay.

b.   Subcontractor shall submit to the Contractor any requests or claims for adjustment in the price, schedule or other provisions of the Agreement for changes directed by the Owner or the Contractor, as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents. Said requests or claims shall be submitted in writing by Subcontractor within seven (7) days of the date that Subcontractor knew or should have known that it had a claim for an adjustment or within such shorter time as may be necessary to allow the Contractor to comply with the applicable provisions of the Owner-Contractor agreement.  If the claim is not made within seven (7) days or the appropriate shorter period, the claim is waived.  The Contractor shall process said requests or claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interest of Subcontractor and others including the Contractor. Agreement adjustments shall be made only to the extent that the Contractor is entitled to relief from or must grant relief to the Owner and the Subcontractor has complied with this Article.  Further, each Agreement adjustment shall be equal only to Subcontractor's allocable share of any adjustment in the Contractor's contract with the Owner.  Subcontractor's allocable share shall be determined by the Contractor, after allowance of the Contractor's normal overhead and profit on any recovery and the Contractor's expense of recovery, by making a reasonable apportionment, if applicable, between Subcontractor, the Contractor and other subcontractors or persons with interests in the adjustment.  This paragraph shall also cover other equitable adjustments or other relief allowed by the Contract Documents.

c.   Payment on account of pending changes made by the Owner shall be made only if the Contractor receives such payment from the Owner for Subcontractor's changed work and the Subcontractor has complied with this Article.  Each payment to Subcontractor on account of pending change orders shall be equal to Subcontractor's allocable share of the Contractor's payment from the Owner for the pending change as determined by the Contractor.  Amounts paid on account of pending changes are provisional and not an admission of liability and shall be repaid to the Contractor on demand whenever the Contractor determines there has been an overpayment.



d.  For changes ordered by the Contractor independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract Amount.  If Subcontractor considers any action or inaction by the Contractor other than a formal change order to be a change, it shall so notify the Contractor within three (3) days of said action or inaction and seek a confirmation from the Contractor.  Failure to comply with said confirmation procedure shall constitute a waiver of the right to compensation for the action or inaction.

e.  For all changes in the work, the Subcontractor shall charge no more than the actual labor cost, including burden, of those individuals actually performing the changed work plus the actual cost of materials, including the cost of delivery, plus the actual direct cost of equipment utilized in the performance of the changed work, which in no event shall be greater than Industry Standards.  The Subcontractor's markup for overhead and profit on the actual direct labor and material cost shall not be greater than that allowed by the Contract Documents and in no event shall be greater than 15%.  Overhead and profit shall not be charged on change orders, which are the result of another subcontractor's performance (i.e., a backcharge to another subcontractor).  Subcontractor shall, at the Contractor's request, provide copies of payroll invoices, cancelled checks, invoices, receipts for all labor and material, and/or other documents which relate to a change.

f.  Subcontractor shall, within seven (7) days of a Contractor request, submit a reasonable price quotation for proposed changes.  If Subcontractor does not and the Contractor is required to submit a price quotation to the Owner which includes a proposed change to Subcontractor's work, the Contractor shall use its best estimate of the proposed change as it affects the Agreement in its quotation to the Owner, which estimate shall be the maximum equitable adjustment due to Subcontractor.

g.  In no event shall the Subcontractor perform any additional work without first receiving written authorization to do so from the Project Manager for the Contractor.  Field staff, including Contractor's superintendents, are not allowed to give such authorization.  Any claim for an adjustment that did not receive prior written approval from the Project Manager is void.

## ARTICLE 8.  COMPLIANCE WITH LAWS, ORDINANCES, ETC.

a.  The Subcontractor shall obtain all permits, licenses, and other governmental fees of any kind that may be necessary for the proper performance of its Work.  Subcontractor shall cooperate fully with and obtain such additional permits, if any, which may be required so that Contractor may at Contractor's cost and expense, connect with, attach to or add to Subcontractor's Work.  All fees for such additional permits shall be paid by Contractor.  The Subcontractor, its employees and all others acting under its direction or control, shall at all times comply with and abide by all Local, State and Federal statutes, ordinances, rules and regulations as well as those of any other public body having authority concerning the Work, including but not limited to the Occupational Safety and Health Act and all similar state and local safety codes and the Immigration Reform and Control Act of 1986 and any other applicable immigration laws or regulations.  The Subcontractor shall assume all liability and responsibility for all royalties, licenses, patent fees, and any other charges made in connection with the use of patented processes upon the Work or in connection therewith.  Subcontractor shall be responsible for the payment of all taxes of any nature related to the performance of its Work and shall pay all contributions and taxes for unemployment insurance or old age retirement benefits, annuities or pensions now or hereafter imposed by the United States or any state or governmental subdivision thereof, or labor organization measured by the wages, salaries or other remuneration paid persons employed by the Subcontractor engaged in the performance of the Work.  The Subcontractor shall comply with all rules and regulations applicable thereto.  In the event that the Contractor is held liable for payment of any taxes, penalties, fines or contributions as a result of the Subcontractor's noncompliance with the provisions of this Article, the Subcontractor shall supply the Contractor with all records necessary to compute such taxes or contributions and shall fully reimburse the Contractor upon demand for the amount thereof (including penalties and interest).  The Subcontractor shall hold and save the Contractor harmless and indemnified against all claims including attorney's fees, arising out of any violation or noncompliance with the provisions of this Article.

b.  If hazardous substances are being used or located on site by the Subcontractor or the Subcontractor's subcontractors, the Subcontractor shall immediately give written notice to the Contractor of its chemical composition and dangers.  If the Subcontractor encounters asbestos, PCB, or other hazardous substances while completing its Work, Subcontractor shall immediately stop work and notify the Contractor's representative at the Project site.

## ARTICLE 9.  INSURANCE

a.  This Subcontractor shall provide insurance in accordance with the requirements of Exhibit #5 attached hereto and the Subcontract Amount includes the cost of said insurance.  The Subcontractor shall provide certificates of insurance naming the Contractor, the Owner, and such other parties designated in Exhibit #5 as named insureds, on all insurance coverages set forth in Exhibit #5.



b. Evidence of insurance coverages noted in Exhibit #5 shall be provided to the Contractor at least seven (7) days prior to the start of any work by the Subcontractor in the field. Any failure to so provide such insurance coverage on behalf of the Contractor, the Owner or other parties shall not relieve this Subcontractor in any way of his responsibilities, obligations and indemnification of the Contractor and the Owner from any acts, damages, accidents, injuries, claims and the like, that occur at the Project site as a result of the operations and activities of this Subcontractor. This Subcontractor agrees to indemnify, defend (with counsel chosen by Contractor), and hold harmless the Contractor and Owner in all respects thereto. Insurance shall be carried by this Subcontractor for the duration of the entire construction of the Project including The Guarantee Period. All insurance provided by the Subcontractor on the Project is non-cancelable without first providing the Contractor with thirty (30) days advance notice by registered mail of said cancellation. Failure to maintain insurance coverage as described hereto and further set forth in Exhibit #5 shall be a breach of this Agreement by the Subcontractor.

c. Subcontractor waives all rights of recovery against the Contractor, the Owner, and such other parties as are required by the Contractor and/or the Contract Documents for losses within the scope of Subcontractor's insurance. Subcontractor will ensure that its subcontractors also waive such claims against the Contractor and Owner.

d. If the Subcontractor fails to secure and maintain the required insurance, the Contractor shall have the right (without any obligation to do so, however) to secure the insurance in the name of and for the account of the Subcontractor, in which event, the Subcontractor shall pay the cost thereof and shall furnish, upon demand, all information that may be required in connection therewith.

e. The obligations of Subcontractor in this Article shall survive termination of this Agreement.

## ARTICLE 10. ASSIGNMENTS

a. Subcontractor shall neither assign this Agreement nor employ other subcontractors for the execution of any part or all thereof without the express written approval of the Contractor and the Subcontractor's surety. Such consent, if given, shall not release the Subcontractor from its obligations hereunder. The Subcontractor agrees that it will be responsible for the acts and omissions of its subcontractors, sub-subcontractors and their employees to the same extent that it is responsible for acts and omissions of persons directly employed by it. The Subcontractor agrees to bind every subcontractor and sub-subcontractor, and every subcontractor and sub-subcontractor agrees to be bound, by the terms of the Contract Documents so far as they are applicable to its Work.

b. Subcontractor, by execution of this Agreement, contingently assigns to the Contractor all Subcontractor's subcontracts. The assignment of each of Subcontractor's subcontracts shall take effect only upon Subcontractor's termination for default under Article 13 and the Contractor's affirmative acceptance of the assignment of the specific subcontract by written notice to Subcontractor and Subcontractor's subcontractor. The Contractor shall have no liability to any of Subcontractor's subcontractors unless and until the Contractor affirmatively accepts the assignment as provided above.

c. In the event of a termination by the Owner of the Contractor for default under the Owner/Contractor contract, the Owner may take assignment of this Agreement.

d. This Agreement shall inure to the benefit of Contractor and its successors, and assigns, heirs and legal representatives, and shall be binding upon Subcontractor, its successors and permitted assigns, if any, pursuant to the terms hereof.

## ARTICLE 11. LOSS OR DAMAGE TO WORK

a. The Contractor shall not be responsible for loss or damage to equipment or materials belonging to the Subcontractor, except where incorporated or installed into the Project in a satisfactory manner in accordance with the provisions of this Agreement. The Contractor shall not be responsible for loss or damage to materials, tools, equipment, or other personal property owned, rented, or used by the Subcontractor or anyone employed by it in the performance of the Work, however caused.

b. Subcontractor shall pay for any damage to the work of another caused by Subcontractor, its employees, subcontractors, sub-subcontractors or agents. Subcontractor shall not claim or be entitled to receive any compensation or damages because of failure of Owner, Architect or Contractor or other subcontractors to have related portions of the Project completed in time for the Subcontractor's Work.

c. Subcontractor shall protect its work, materials, tools and equipment against any loss or damage by fire, theft, accident or other cause. In the event of any injury, loss or damage to Subcontractor, its agents or employees or to its work, materials, or equipment, Subcontractor shall make no claim against Contractor by reason thereof.



## ARTICLE 12.  CLEANUP

a.  All debris resulting from the Work shall be removed from the Work areas by the Subcontractor to locations on the Project Site designated by the Contractor as and when instructed by the Contractor's Superintendent.  The Contractor shall have the right, where the Subcontractor fails to comply with its obligations under this Article, after 24 hours prior written notice, to accomplish the Subcontractor's cleanup with its own forces and equipment, and withhold the amount of all costs incurred in so doing from any amounts due the Subcontractor.

## ARTICLE 13.  SUBCONTRACT'S FAILURE TO PERFORM OR DEFAULT

a.  If, in the sole opinion of the Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workers, adequate supervision or material of the proper quality, (2) fail in any material respect to prosecute the Work according to the Contractor's current schedule, (3) cause, by any action or omission, the stoppage or delay of or interference with the work of the Contractor or of any other contractor or subcontractor, (4) fail to comply with any provision of this Agreement or other Contract Documents, (5) make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent, then, after serving three (3) days' written notice and the Subcontractor fails to eliminate the condition specified in that notice within the time allowed, the Contractor, at its option, without voiding the other provisions of this Subcontract and without notice to the sureties, may (i) take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to the Contractor for all cost, expenses, and damages resulting therefrom, (ii) terminate this Agreement, or (iii) obtain specific performance or interlocutory mandatory injunctive relief requiring performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that such relief may be necessary to avoid irreparable harm to the Contractor and/or the Owner.  In the event of termination by the Contractor, the Contractor may, at its option, (a) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (b) take assignment of any or all of Subcontractor's subcontracts, and/or (c) either itself or through others complete the Work by whatever method the Contractor may deem expedient.  In case of termination by the Contractor, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by the Owner and payment in full is made by the Owner.  At such time, if the unpaid balance of the price to be paid shall exceed the amount of all costs, expenses, and damages incurred by the Contractor including its reasonable overhead and profit, such excess shall be paid by the Contractor to Subcontractor.  If such amount shall exceed such unpaid balance, the Subcontractor shall pay the Contractor the difference immediately upon demand.

b.  If the Contractor wrongfully exercises its option under Article 13, that action shall be treated as a deductive change.  If the Contractor wrongfully exercises its option under Article 13, that termination for default shall be considered a termination for the Contractor's convenience and Subcontractor shall be entitled to the applicable compensation provided in Article 18.  Subcontractor's remedies under this Article 13.b. shall be exclusive.  Nothing herein shall bar withholdings by the Contractor permitted by other provisions of this Agreement.

c.  Any claim arising out of or related to this Agreement shall not be subject to any requirement to mediate or arbitrate unless the parties mutually agree to such a proceeding.  Any mutual agreement to mediate or arbitrate any one claim shall be strictly limited to the one claim and no other.

## ARTICLE 14.  GUARANTEES

a.  Subcontractor warrants and guarantees that all the Work shall be free from defects in workmanship and materials at the time that it is completed and for a minimum period of one (1) year from date Owner accepts the Project (hereinafter the "Guarantee Period") and promptly upon Contractor's request, will correct by repair or replacements, without charge, any such defects (and any damage to other property, including without limitation the work of other subcontractors resulting therefrom or from the correction thereof) which may appear in the Work.  Where the contract documents between the Owner and Contractor, or governmental bodies or agencies require guarantees extending beyond one year, or any additional warranties or guarantees are included in this Agreement, the Subcontractor's obligation shall remain in effect for such extended period of time.

b.  If the Subcontractor fails to commence and to complete the repair or replacement of improper or defective work, as specified, within a reasonable period of time as determined by the Contractor in its sole discretion, the Contractor may proceed to arrange to have such work completed and do so by whatever method it may deem expedient and may charge the cost thereof against any monies due to the Subcontractor.  If the unpaid balance of the Subcontract Amount shall exceed the expense of finishing the Work, including proper allowance for additional managerial and administrative expenses, such excess shall be paid to the Subcontractor.  If such expense shall exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor immediately upon demand.

c.  If the Subcontractor shall cover any portion of the Work prior to the Inspecting Architect having a reasonable time and opportunity to inspect, the Subcontractor, upon the request of the Architect, shall uncover that portion of the Work, and the costs of uncovering and replacing the Work shall be at the Subcontractor's sole expense.

d.  The obligations of Subcontractor in this Article shall survive termination of this Agreement.



## ARTICLE 15.  LABOR TO BE EMPLOYED/SUBCONTRACTOR REPRESENTATIVE

a.   The Subcontractor shall not employ men, means, material or equipment which may cause strikes, work stoppages or any disturbances by workmen employed by the Subcontractor, Contractor, or other subcontractors on or in connection with the Work or the Project or the location thereof.

b.   Subcontractor understands that the Contractor, other subcontractors and/or other contractors of the Owner may employ both Union and Non-Union workers on the Project.  If required by the Contract Documents or specified in an Exhibit to this Agreement, Subcontractor agrees to employ Union labor.

c.   The Subcontractor shall at all times enforce strict discipline and good order among its employees and shall not employ on the Work any person unfit for or not skilled in the work assigned to him.  Subject to the foregoing and to preserving good relations with the public and requiring the discharge of any employees causing a breach of peace or other disturbance of said relations, the Contractor shall not in any way interfere with the Subcontractor's right to hire and fire its employees, assign duties to them, and fix their working hours, wages or terms or conditions of employment, which right shall be absolute.  Exceptions to this provision shall apply in those instances where Federal, State or Local Agencies having jurisdiction over the Project dictate a level of prevailing wage or oversee and establish minimum working standards or establish non-working hours for the Project.

d.   Subcontractor shall maintain a foreman on the job at all times with full authority and expertise to execute and direct the Subcontractor's Work in accordance with the Contract Documents and as directed by the Contractor's Superintendent.  The Subcontractor shall notify the Contractor's Superintendent upon arrival and departure of the Subcontractor's men from the job site.  The Contractor shall from time to time schedule job meetings, which shall be attended by an authorized representative of the Subcontractor with authority to make commitments, which shall be binding, on the Subcontractor.

e.   Should the Subcontractor fail to carry out or comply with the provisions of this Article, it shall be in default and the Contractor shall have the right to terminate this Agreement in accordance with Article 13 hereof.

## ARTICLE 16.  SEPARABILITY

In the event that any provision of this Agreement or any part of any Article thereof shall be declared invalid by a court of competent jurisdiction, it shall not affect the validity of any other parts of this Agreement or any other provisions of an Article containing an invalid provision, which shall remain in full force and effect.

## ARTICLE 17.  LIABILITY FOR DAMAGES AND INJURY

a.   Subcontractor shall defend (with a mutually agreeable attorney), indemnify, hold harmless and reimburse Owner, Contractor and their agents, officers, and employees (the "Indemnitees") from all claims, damages, losses and expenses (including, but not limited to attorney's fees and costs) attributable to bodily injury, sickness, disease or death or injury to or destruction of tangible property, including but not limited to the loss of use resulting therefrom, arising out of or in connection with the performance of the Work or any negligent act or omission of Subcontractor at or in connection with the Project, by anyone directly or indirectly employed by Subcontractor, its lower tier sub-subcontractors and suppliers, or anyone else for whose acts Subcontractor is liable even if caused jointly and concurrently by the negligence of the Indemnitees and Subcontractor (or any one or more of either of them).  In any and all claims against the Indemnitees by any employee of Subcontractor or anyone for whose acts Subcontractor may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount of or type of damages, compensation or benefits payable by or for Subcontractor or any sub-subcontractor under Workers' or Workmen's Compensations Acts, disability benefits or other employee benefit acts nor by any requirement for insurance.  Subcontractor does not assume liability for loss or damage due solely to the negligence of Contractor.  The Subcontractor shall promptly reimburse the Contractor therefore, and if any such claims or suits remain outstanding at the time the Work is completed, final payment shall be deferred until they are adjusted.  The Subcontractor shall ensure that all of its subcontractors agree to bring any claims for damages or injuries against Subcontractor and not to bring such claims against the Contractor or Owner to the fullest extent permitted by law.

b.   Subcontractor shall be liable to the Contractor for all costs the Contractor incurs as a result of Subcontractor's failure to perform this Agreement in accordance with its terms.  Subcontractor's failure to perform shall include the failure of its lower-tier subcontractors or materialmen to perform.  Subcontractor's liability shall include but is not limited to (1) damages and other delay costs payable by the Contractor to the Owner; (2) the Contractor's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties; (5) excess reprocurement costs; (6) consultants' fees; and (7) attorneys' fees and related costs.

c.  Subcontractor's assumption of liability herein includes but is not limited to assumption of all liabilities on account of or in any way related to Subcontractor's Work, which the Contractor has assumed under the Contract Documents or under agreements with third parties who may be affected by construction of the Project.

d.  Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 9, or otherwise.  All amounts owed by Subcontractor to the Contractor as a result of the liability provisions of this Agreement shall be paid upon demand.

e.  The Subcontract Amount includes one hundred dollars ($100.00) as specific consideration for indemnification under this Agreement.

## ARTICLE 18.  TERMINATION FOR CONVENIENCE

a.  The Contractor, at its sole discretion, may terminate this Agreement without cause at any time by giving at least ten (10) days' prior written notice of such termination to the Subcontractor.  Upon any termination of this Agreement pursuant to this Article, and subject to all of the terms and provisions herein contained, the Subcontractor shall be entitled to payment up to the Contract Amount for all accepted work furnished or installed by it.  However, the Contractor may retain from any monies due the Subcontractor, an amount sufficient to cover the Subcontractor's obligations under the Article 14. Guarantee.  Upon the expiration of such obligations, the balance of such amount, if any, shall be paid to the Subcontractor.  The Subcontractor, upon termination of this Agreement, shall forthwith peaceably and quietly surrender to the Contractor all premises, facilities, machinery, and equipment furnished by or belonging to the Contractor and shall cooperate with the Contractor in facilitating the transition of work to a new party.

b.  Subcontractor shall not be entitled to anticipate profits on work unperformed or on material or equipment unfurnished.

## ARTICLE 19.  DISCONTINUANCE OR SUSPENSION OF WORK

If, as a result of fire, earthquake, Act of God, war, strike, picketing, boycott, lockout or other cause beyond the control of Owner or Contractor, Owner or Contractor decide, in their sole discretion, that it is inadvisable to proceed with the Work hereunder then Subcontractor shall, upon receiving written notice thereof from Owner or Contractor, immediately discontinue any further work hereunder until such time as Owner or Contractor may deem it advisable to resume said Work.  Subcontractor will resume the Work promptly upon receiving notice from Contractor to do so and Subcontractor shall not be entitled to any damages or compensation on account of any such cessation of work as a result of any of the causes set forth herein.

## ARTICLE 20.  SUBCONTRACTOR'S BOND

a.  If required of the Contractor, the Contractor shall have the option to require the Subcontractor to furnish a bond or bonds in the form and amounts satisfactory to the Contractor at the time of execution of this Agreement.  In such case, the Subcontractor will be paid additional reasonable compensation for the cost of such bond or bonds.

b.  Any Subcontractor's bonds shall cover the faithful performance of this Agreement, the payment of all obligations arising therefrom and the maintenance of the completed improvements for one (1) year from the date of final approval and acceptance (and also where any governmental bodies or agencies or the Contract Documents including the contract between the Owner and Contractor require guarantees extending beyond one (1) year, for such extended period) against defective workmanship and materials (even where furnished by Contractor or its suppliers) and liability for damages resulting therefrom.  The bond(s) will be issued by a surety acceptable to the Contractor, and must be in the form attached hereto as Exhibit #8.

## ARTICLE 21.  USE OF CONTRACTOR'S EQUIPMENT

Contractor's equipment will be available for use by Subcontractor only at Contractor's discretion and upon mutually satisfactory terms.  In using such equipment or facilities (including but not limited to rigging, blocking, hoisting equipment and scaffolding), Subcontractor shall be responsible for and shall indemnify, defend (with counsel chosen by Contractor), and hold Contractor harmless from and against any and all claims, actions, demands, damages, liabilities or expenses, including attorney's fees, which may arise from such use.  Subcontractor has examined and will examine all such equipment and understands that Contractor makes no warranty regarding the same, such use being at Subcontractor's own risk.



**ARTICLE 22.  SAFETY**

This Subcontractor is to provide adequate and proper safety protection for its men and equipment and shall strictly comply with all the rules and regulations of the federal and state Occupational Safety and Health Acts.  Hard hats will be worn by all personnel employed on the job by this Subcontractor at all times.  Payments may be withheld for any failure by Subcontractor to comply with the requirements of this Article.  Accidents to employees or sub-subcontractors of this Subcontractor will be promptly reported in detail to the Job Superintendent.  Fines resulting from acts of this Subcontractor for failure to comply with the safety regulations and the requirements of OSHA or a state or local agency will be promptly paid by this Subcontractor or deducted from its Subcontract Amount.

**ARTICLE 23.  EQUAL OPPORTUNITY AND NON-DISCRIMINATION**

Subcontractor agrees to indemnify, defend (with counsel chosen by Contractor), and hold Contractor harmless of, from and against any and all loss, cost, damage, charge or expense, caused or contributed to by the violation or claimed violation by the Subcontractor of the Labor Management Relations Act of 1947, as amended, the equal employment opportunities laws, and any applicable and valid order, rule or regulation issued by any appropriate governmental agency in accordance with those laws.  Subcontractor agrees to abide by and comply with all federal, state and local nondiscrimination laws, rules and regulations including but not limited to the Fair Housing Act, Americans with Disabilities Act, and similar state and local laws as they may apply to the Work.

**ARTICLE 24.  ATTORNEYS' FEES**

Should any litigation or arbitration be commenced between the parties hereto concerning the Work, any provision of this Agreement or the rights or obligations of either party in relation hereto, the party, Subcontractor or Contractor, prevailing in such litigation or arbitration shall be entitled to a reasonable sum for attorneys' fees in such proceedings, unless any part of this litigation or arbitration is related to an Article 13 default as part of Contractor's claim against Subcontractor or as part of Contractor's defense to Subcontractor's claim for payment.

**ARTICLE 25.  DEMANDS AND NOTICES**

All notices, demands, requests and other communications required or permitted to be given hereunder or by law to either party hereto shall be in writing and shall be deemed duly served or delivered when personally delivered to the party to whom it is addressed or when personally delivered to a supervisorial employee of said party or, when in lieu of said personal service, deposited in the United States Mail, first class postage prepaid, addressed to the Contractor or Subcontractor at the address that appears for each of them in this Subcontract.  Either party hereto may change its address for the purposes of this Article by giving written notice of such change to the other party in the manner provided in this Article.

**ARTICLE 26.  CAPTIONS**

The captions used for the sections in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of the intent of this Agreement, or any section thereof.

**ARTICLE 27.  SINGULAR NUMBER**

Whenever used in this Agreement, the singular number shall include, the plural, and the use of any gender shall be applicable to all genders.

**ARTICLE 28.  AUTHORITY**

If Subcontractor is a corporation, the person signing this Agreement on behalf of such corporation hereby warrants that he or she has full authority from such corporation to sign this Agreement and obligate the corporation.

**ARTICLE 29.  FAILURE TO NEGOTIATE PAYMENTS**

Any payment hereunder that remains unclaimed or un-cashed or otherwise unconverted by the Subcontractor shall after a five (5) year period, automatically, without any further action of any party, become the sole property of Contractor.

**ARTICLE 30.  CONFLICT IN INTEREST**

Until Subcontractor's obligations under this Agreement are completely fulfilled and the Project is complete, Subcontractor agrees not to perform any work related to the Project directly for the Owner, other contractors or any other entity or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by Contractor.  All work for this Project performed by Subcontractor shall be processed and handled exclusively through Contractor.

**ARTICLE 31.  SUBCONTRACTOR'S OBLIGATION TO THE OWNER**

a.    In addition to its contractual obligations pursuant to the terms of this Agreement, Subcontractor is obligated directly to the Owner for the quality of work.

b.    The services to be provided by Subcontractor hereunder are for the benefit of one or more partnerships, corporations, limited liability companies or joint ventures formed or to be formed to own and/or develop the project involved (together, the "Owner").  The Owner possesses some identity of interest with the Contractor and it is agreed that the Owner can enforce directly against Subcontractor all warranties or common law or statutory remedies, or contractual obligations with respect to the quality of the Work by a lawsuit for damages without the necessity of including the Contractor as a party to the litigation or arbitration.  In this respect, Subcontractor expressly waives any requirement of privity between it and the Owner for the purposes of the Owner's making claims for defective work under this Agreement on any of the above said grounds.

c.    If for any reason the abovesaid waiver is not enforceable, Subcontractor agrees that Contractor may assign to Owner at any time all of the benefits of this Agreement with respect to the Subcontractor's obligation to provide a work product free from defects and that Owner may then enforce those obligations directly as if it had contracted with Subcontractor directly.

d.    If claim is made against Owner in any way arising out of the quality of Subcontractor's work, Subcontractor agrees to indemnify, defend (with counsel chosen by Contractor), and hold harmless Owner against any and all monetary damages sustained by Owner including attorney fees, incurred as a result of such claim.  It is agreed that the statute of limitations controlling such claim by the Owner shall begin to run at the earliest from the date of any judgment against the Owner arising out of Subcontractor's defective work.  This obligation shall survive termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**CONTRACTOR:**                                               **SUBCONTRACTOR:**
BOZZUTO CONSTRUCTION COMPANY              DALE WATERPROOFING SYSTEMS, INC.

BY:        David V. Mandes                                      BY:
TITLE:    Vice President                                          TITLE:

WITNESS                                                                WITNESS:



**Dale Waterproofing Systems, Inc.**
**Contract Number:  1154-026**

**Contract Date:**     **07/31/2012**

| Dwg No. | Title | Rev. Date | Rev. No. | Notes |
|---|---|---|---|---|
| A000 | COVER SHEET | 7/13/2011 | 0 | |
| A001 | DRAWING INDEX | 7/3/2012 | 0 | |
| LC1 OF 10 | OVERALL COURTYARD PLAN | 7/13/2011 | 0 | Addendum 1 |
| LC2 OF 10 | BUILDING A COURTYARD LAYOUT AND PLANTING PLAN | 7/13/2011 | 0 | Addendum 1 |
| LC3 OF 10 | BUILDING A COURTYARD LIGHTING AND DRAIN PLAN | 7/13/2011 | 0 | Addendum 1 |
| LC4 OF 10 | BUILDING B EAST & WEST COURTYARD LAYOUT PLAN | 7/13/2011 | 0 | Addendum 1 |
| LC5 OF 10 | BUILDING B EAST & WEST COURTYARD PLANTING PLAN | 7/13/2011 | 0 | Addendum 1 |
| LC6 OF 10 | BUILDING B EAST & WEST COURTYARD LIGHTING PLAN | 7/13/2011 | 0 | Addendum 1 |
| LC7 OF 10 | BUILDING B EAST & WEST COURTYARD DRAIN PLAN | 7/13/2011 | 1 | |
| LC8 OF 10 | BUILDING A AND B COURTYARD DETAILS | 7/13/2011 | 1 | |
| LC9 OF 10 | BUILDING A AND B COURTYARD DETAILS | 7/13/2011 | 1 | |
| LC10 OF 10 | BUILDING A AND B COURTYARD DETAILS | 7/13/2011 | 1 | |
| A002 | ARCHITECTURAL SITE PLAN | 7/3/2012 | 0 | |
| A011 | CODE DATA SHEETS | 7/3/2012 | 0 | |
| A012 | CODE DATA SHEETS | 7/3/2012 | 0 | |
| A013 | CODE DATA SHEETS | 7/3/2012 | 0 | |
| A013 | CODE DATA SHEETS | 7/13/2011 | 0 | |
| A014 | BLDG A - MEANS OF EGRESS PLAN | 7/3/2012 | 0 | |
| A015 | BLDG B - MEANS OF EGRESS PLAN | 7/3/2012 | 0 | |
| A016 | BLDG A - FRONTAGE INCREASE CALCS | 7/3/2012 | 0 | |
| A017 | BLDG B - FRONTAGE INCREASE CALCULATIONS | 7/3/2012 | 0 | |
| A019 | BLDG B - BASEMENT CALCS | 7/3/2012 | 0 | |
| A021 | BLDG A - BUILDING AREAS | 7/3/2012 | 0 | |
| A023 | FHA Requirements | 7/3/2012 | 0 | |
| A024 | ANSI 2003 - MOUNTING HEIGHTS AND DESIGN CRITERIA | 7/3/2012 | 0 | |
| A025 | ANSI 2003 - MOUNTING HEIGHTS AND DESIGN CRITERIA | 7/3/2012 | 0 | |
| A031 | WALL PARTITION TYPES | 7/3/2012 | 0 | |
| A032 | ASSEMBLIES AND DETAILS | 7/3/2012 | 0 | |
| A033 | ASSEMBLIES AND DETAILS | 7/3/2012 | 0 | |
| A034 | ASSEMBLIES AND DETAILS | 7/3/2012 | 0 | |
| A035 | ASSEMBLIES AND DETAILS | 7/3/2012 | 0 | |

## EXHIBIT "2"

## SCOPE OF WORK

Provide all necessary labor, materials, tools, equipment and supervision to fully execute the requirements to furnish, deliver and install:

## WATERPROOFING

This Agreement shall include, but is not limited to, the items listed below:

**General:**

1. The work of this Subcontract shall be performed in strict accordance with the Contract Documents listed in Exhibit (1).  Should any of the items noted within this Subcontract be in conflict with the Contract Documents listed in Exhibit (1), this Subcontractor shall immediately notify Contractor in writing prior to proceeding with the work.

2. In addition to the other requirements of this Subcontract, it is understood that the Subcontractor is expected to provide complete and operational systems fit for their intended purpose, which are free of any defects and consistent with the intent of the Contract Documents listed in Exhibit (1).  Accordingly, additional compensation shall not be allowed for coordinating the work of this Subcontract with the work of any other trades and/or the Contract Documents listed in Exhibit (1), complying with the requirements bearing on the work of this Subcontract by any authority having jurisdiction over the Project, and/or performing minor changes or corrections to the Plans and Specifications listed in Exhibit (1).

3. This Subcontractor will be responsible for the purchase of any licenses necessary for the execution of their work, including but not limited to licensing with the Borough of Malvern and Willistown Township. The building permit is purchased by the Owner.

4. This Subcontractor will provide a minimum of six (6) sets of shop drawings, schedules, calculations, product data, samples, safety plan, etc. as they apply for submittal to Contractor for approval.  All documents thus will be submitted to comply with the construction schedule requirements of Contractor.

5. The Subcontractor will not revise or alter any approved submittals without prior approval.  Any and all costs incurred as a result of unapproved changes or modifications will be borne by this Subcontractor.

6. No substitutions of any kind will be made to the materials or methods of this Subcontract without the express written authorization of the Contractor. Any substitutions made by Subcontractor without prior consent of Contractor, Owner & Architect shall be replaced and corrected at no cost or time delay to the Contractor.

7. Subcontractor shall maintain safe working environment at all times. This shall include, but not be limited to, providing UL approved equipment in proper working condition with no frayed or exposed wired or chords, properly functioning safety mechanisms, functioning ground connections and 3-prong plugs, guards on all power saws, etc. Safety consultants will be conducting regular, surprise inspections of the site and making reports for safety performance of all subcontractors on site. Repeat violations will result in penalties or termination for cause, subject to terms of the Contract Documents.

8. No open flames or unregulated extreme heat sources will be permitted in or around the buildings. Any such devices deemed required by Subcontractor shall be approved by Contractor in writing prior to commencement of work and usage in or around buildings. Violation of this regulation may result in immediate termination for cause, and subject to terms of the Contract Documents.

9. Smoking in or around buildings is expressly prohibited. Violation of this regulation may result in immediate termination for cause, and subject to terms of the Contract Documents.

10. All work will be in accordance with any and all applicable codes and any plan review agencies.

11. A Payment & Performance Bond has been included in this Agreement.

12. Contractor enforces hardhat and protective clothing requirements on the jobsite at all times.  Short pants, sleeveless shirts, sneakers, etc. will not be permitted on site.

13. This Subcontractor is responsible for daily clean-up of their work area. Dumpsters will be provided by others. Boxes and other packaging materials shall be broken down completely prior to placement in dumpster. Failure to do so may result in penalty. This subcontractor will also be required to have manpower available to be part of a clean up crew every Friday to work along with the other subcontractors on the site. If manpower is not available or if this subcontractor refuses to participate in the clean up crew the contractor will provide the manpower and backcharge the sub for their time.

14. Street cleaning for your work is required as part of this subcontract. It shall be done to maintain clean roadways and as required by local or state officials. This subcontractor shall clean all mud, dirt or debris, from roadways resulting from the performance of their work while this subcontractor is working on site.

**LEED Requirements:**

1. This subcontractor will cooperate with field team in the effort to recycle materials where applicable.

2. This subcontractor will use Low VOC adhesives where applicable.

3. This subcontractor will provide all required documentation required for their scope of work as it relates to LEED.

**Project Specific:**

1. Furnish all labor, materials, equipment and services necessary for and incidental to the execution and completion of all Foundation / Plaza Waterproofing Work in accordance with the Contract Documents for two (2) residential buildings.

2. Supply and install Rub-R-Wall waterproofing system in accordance with Manufacturer's installation recommendation on all exterior concrete or masonry walls and the plaza deck area that has garage space below as shown on Contract Documents.

3. The Subcontractor shall provide a Ten (10) year written warranty.

4. Below grade Waterproofing shall be installed as follows:

   • Furnish and 40 mil Rub-R-Wall membrane and all accessories required by the manufacture to ensure that the system works as intended. Protected by Hydro-Duct 200 Drainage Composite panels.

   • Provide waterproofing from the top of the footings to just below finished grade as directed by the Project Superintendent.

5. Above grade waterproofing shall be installed as follows:

   • Furnish and install RPC S/A sheet membrane along perimeter of framing, 9" up the wall from plaza and 9" from the plate onto plaza surface; install RPC S/A sheet membrane onto interior side of planters, along base 9" up the wall 9" from the wall onto the plaza deck.

   • Install Rub-R –Wall waterproofing membrane onto the entire plaza deck surface overlapping all S/A sheet membrane; install Rub-R-Wall onto interior walls of planters including the planter floor. Rub-R-Wall shall be installed at a thickness of 40 mils.

   • Furnish and install WR Grace Hydroduct 660 over the entire plaza deck surface covering the Rub-R-Wall, including the interior walls of the planters.

   • Furnish and install 1" Styrofoam over Hydroduct 660 on the plaza deck surface only.

6. Prepare area to be waterproofed as required by manufacturer's warranty requirements.

7. The subcontractor will attend weekly project coordination meetings immediately prior to and during the completion of your work.

8. This agreement excludes the supply and installation of drains and stone.

9. All work will be in accordance with OSHA standards.

10. The Subcontractor will provide submittals for approval by the Architect.

Time is of the essence in the execution of the Work of this Agreement.   Therefore, sufficient labor and materials must be provided at all times to meet the Job Progress Schedule as reasonably updated by Contractor.  This Subcontractor agrees to take whatever steps are necessary, including additional manpower, equipment, overtime, additional shifts, etc. at its sole cost and expense, to perform its Work in the time frame indicated below.  Saturday and Sunday work will be performed at no additional cost to the Contractor as required to meet the schedule.

**<u>ALTERNATES:</u>**

If directed in writing by the Contractor, the Subcontractor shall perform any alternate work that would normally be associated with this Scope of Work. All other terms and conditions of this Agreement shall apply to any alternate work completed under this Agreement.  Alternate prices include labor, material, taxes, insurance, overhead and profit.

**END OF EXHIBIT "2"**

 SUB
PM

SUBCONTRACTOR: Dale Waterproofing Systems, Inc.
PROJECT: Malvern East King Street
CONTRACT # 1154-026
DATE: 7/31/2012

## EXHIBIT "3"

### GENERAL REQUIREMENTS FOR SUBCONTRACTORS

### PART I:  PROJECT SPECIFIC REQUIREMENTS

1. <u>WORK HOURS</u>:  7:00 AM - 5:00 PM

2. <u>DELIVERY HOURS</u>:  7:00 AM - 2:00 PM

3. <u>REQUISITIONS</u>:   DUE BY: 20th day of each month.  PAYABLE ON: 25th day of the following month.

### PART II:  GENERAL REQUIREMENTS

1. <u>COORDINATION OF WORK</u> - The Subcontractor shall familiarize himself with the methods of construction and the work sequence that the Contractor plans to use in order to plan his own Work in such a way as to expedite construction operations. The Subcontractor shall setup and maintain a rate of progress subject to the Contractor's direction and control for purposes of coordinating the overall construction progress.  The Subcontractor assumes full responsibility for coordinating his Work with that of the other trades and, before proceeding, the Subcontractor shall request and obtain from the Contractor all information necessary to enable him to properly fit his Work to all surrounding work.  The Subcontractor shall immediately notify the Contractor of any deviations or discrepancies between Contract Documents and work already installed and, in such case, shall not proceed with his work until he has received instructions from the Contractor.  Should any work be necessary for the proper completion of the Project, such work shall be performed as fully as if described and delineated herein.  If Subcontractor proceeds with work, he has accepted the condition of the site and work previously performed.

2. <u>EROSION CONTROL</u> - Avoid, wherever possible, disturbing the existing vegetation of the site, and in the event vegetation is disturbed, stabilize the disturbed area after completion of the work to minimize erosion.  In the event this Subcontractor disturbs, either intentionally or unintentionally, any erosion control structures to do his work, he will replace or repair said structures at the close of each working day.

3. <u>COMPLETENESS</u> - It is understood and agreed that this Subcontractor will provide a finished and acceptable product and will be responsible for all details, accessories and appurtenances necessary to accomplish a complete and acceptable job whether the specific details are indicated on the plans or not.

4. <u>CUTTING AND PATCHING</u> - This Subcontractor will be responsible for all cutting and patching required for his work. Any cutting or patching required as a result of this Subcontractor's failure to prosecute or coordinate his work in a timely manner will be this Subcontractor's responsibility at no additional cost to Contractor and/or Owner.  This work will include any sealing (fireproofing) at any penetrations through walls, ceilings or floors.

5. <u>DEFECTS</u> - Subcontractor shall report in writing to Contractor any alleged defects in the work of any other party, on or in which Subcontractor is to install the Work and Subcontractor's failure to do so shall be deemed to be an acknowledgment by Subcontractor that such other work is fit and proper for the Work of Subcontractor, and Subcontractor shall thereby waive any claim or defense based upon such alleged defect to justify any failure of performance on Subcontractor's part.

6. <u>MATERIALS AND SAMPLES</u> - Prior to delivery of material, the Subcontractor shall submit to the Contractor and Owner for approval or rejection, a sample and, if required, product data for each item to be supplied by him.  These samples, after such approval, shall constitute a minimum acceptable standard for the Project, provided they meet all specifications required by the Agreement.  Materials not in accordance with the accepted sample or the specifications shall not be installed and shall be removed and replaced by the Subcontractor at his expense.  The Subcontractor, at his own expense, shall furnish such samples of his work and make or cause to be made such material tests or test of his work performed as may be required from time to time by the Contractor and any governmental agencies that may have jurisdiction over the Project.

7. <u>SHOP DRAWINGS</u> - Before installation, the Subcontractor shall submit to Contractor, Owner and Architect, for their approval, complete Shop Drawings and samples as Contractor, Owner or Architect may deem necessary for the proper performance of the Work, shall make such corrections in any such Shop Drawings as may be required by Contractor, Architect or Owner and shall resubmit corrected Shop Drawings to Contractor without delay.  Approval of any Shop Drawings or samples shall be general and shall not relieve Subcontractor from responsibility of furnishing and installing the Work in accordance with the Contract Documents or for proper measurements and fitting of the Work.  All Shop Drawings and samples shall be submitted so as to cause no delay in the Contractor's progress schedule for the construction.  In addition, Subcontractors shall furnish Contractor with a duplicate copy of all plans and specifications, drawings, diagrams and applications prepared and submitted in conjunction with obtaining such permits as may be required by law, regulation or ordinance.

8. <u>RECORD DRAWINGS</u> - Record drawings shall be maintained at the job site to indicate any deviation from the Bid Set. The record drawing shall be delivered to the Contractor at the completion of the Work.

9. <u>SERVICE/MAINTENANCE MANUAL</u> - The Subcontractor shall submit to the Contractor (prior to acceptance of the first apartment units) three (3) typed service and maintenance manuals.  The manuals shall include operating information, troubleshooting information; instructions for ordering parts; recommendations for stocking of spare parts; names, addresses and phone numbers of suppliers and local maintenance facilities.

10. <u>OPERATING TESTS</u> - Upon completion and prior to acceptance of this Subcontractor's Work, this Subcontractor will subject all systems installed by him to such operating tests as may be required by the Contractor, Owner, the Architect, and Federal, State and local inspectors to demonstrate satisfactory functional and operating efficiency.  All instruments, facilities and labor required to conduct the tests will be provided by this Subcontractor at no cost to the Contractor and/or any other parties.

11. <u>INSTRUCTIONS</u> - The Subcontractor will thoroughly instruct the Owner's designated representatives in the proper operation and maintenance of all systems.

12. <u>PRINCIPAL AXIS LINES</u> - Contractor shall establish principal axis lines and levels on which Subcontractor shall layout the Work.  However, Subcontractor shall layout the Work and be responsible for the accuracy thereof, using care to insure that all finished surfaces are in perfect alignment.  Subcontractor shall be liable for any damage suffered by Contractor or other Subcontractors caused by his failure to layout and install his Work correctly.

13. <u>STORED MATERIALS</u> – This Subcontractor may be eligible for payment for materials properly stored if allowed by the Owner and the Owner's Lender.  If allowed and in addition to any other requirements contained herein, Subcontractor will prepare and execute a "Bill of Sale" that explicitly describes the materials sold to Contractor on a form acceptable to Contractor, Owner, and Owner's lenders.  Subcontractor shall provide an "All Risk" insurance policy in an amount sufficient to cover the replacement cost of the material.  This policy will name as the insureds the Contractor and Owner.  The deductible on this policy is $100.00 per occurrence.  Payment for materials stored offsite will in no way be acknowledged by the Contractor as acceptance of materials.  It will be the responsibility of the Subcontractor to assure delivery and installation of all materials as specified in this Contract.

14. <u>CLEANUP</u> - This Subcontractor will be responsible to cleanup after himself on a daily basis and deposit such trash as is generated by his work in a receptacle to be designated by the Project Superintendent.  If Subcontractor fails to cleanup his debris as herein specified, the Contractor is hereby granted the authority to cleanup the Subcontractor's debris at this Subcontractor's expense and to backcharge this Subcontractor for all expenses incurred, including a 15% overhead factor.

15. <u>DELIVERY, STORAGE AND HANDLING</u> - This Subcontractor includes the expediting, receiving, handling, hoisting, rigging, storage and protection of all materials and equipment required for the performance of this Subcontract, whether purchased by this Subcontract or others.  Subcontractor shall notify and coordinate with the Contractor prior to scheduling the delivery of any "bulk" materials.  All deliveries shall be made between 7:00 AM - 2:00 PM, Monday through Friday (unless other restrictions apply due to local site conditions)

16. <u>CONFLICT OR INCONSISTANCY</u> - In the event of any inconsistency  (with respect to the Scope of Work being provided by this Subcontractor) between items contained within this Agreement and/or between items contained within this Agreement and the Contract Documents, the higher standard or larger quantity shall govern and be included within this Agreement.

17. <u>MEETINGS</u> – An authorized representative of this Subcontractor shall attend all on site job progress and safety meetings while this Subcontractor is working on site and at other times as requested by the Contractor.

18. TEMPORARY POWER AND LIGHTING – This Subcontractor is responsible for providing all temporary power and lighting necessary to complete the work of this Subcontract.

19. PERMITS – The building permit will be obtained by others.  This Subcontractor is required to obtain all other permits necessary to complete the work of this Subcontract.

20. PAYMENT APPLICATIONS – This Subcontractor shall submit all payment applications through the electronic GCPay system for approval.  Instructions for GCPay will be provided by the Contractor to the Subcontractor.

**END OF EXHIBIT "3"**

## EXHIBIT "4"

## <u>PAYMENT SCHEDULE</u>

| SUBCONTRACTOR /VENDOR: | Dale Waterproofing Systems, Inc. | CONTRACT NUMBER: | 1154-026 |
|---|---|---|---|
| PROJECT: | Malvern East King Street | PROJECT NO.: | 1154 |

| ITEM NO. | COST CODE | DESCRIPTION | UNIT | UNIT PRICE | VALUE $ |
|---|---|---|---|---|---|
| 001 | 51400-07100-0000 / | Building A Foundation Walls | 1 | $28,755.00 | $28,755.00 |
| 002 | 51400-07100-0000 / | Building B Foundation Walls | 1 | $24,765.00 | $24,765.00 |
| 003 | 51400-07100-0000 / | Building A Plaza Deck | 1 | $114,040.00 | $114,040.00 |
| 004 | 51400-07100-0000 / | Building B Plaza Deck | 1 | $137,440.00 | $137,440.00 |

**CONTRACT TOTAL:**  $305,000.00

**ACCEPTED BY:** _____

Dale Waterproofing Systems, Inc.

**ACCEPTED BY:** _____

Bozzuto Construction Company

**RETAINER TERMS:**  10.00%

(For Accounting Use Only)

## END OF EXHIBIT "4"

## EXHIBIT "5"

## INSURANCE REQUIREMENTS

Certificate Holder - Contractor: **Bozzuto Construction Company**

The Subcontractor shall provide at his own expense, all necessary insurance in amounts equal to or greater than the limits set forth below:

1.  Commercial General Liability Coverages:

| | | |
|---|---|---|
| a. | General Aggregate | $2,000,000 |
| b. | Products/Completed Operation (such coverage to continue for three years after completion of all work) | $2,000,000 |
| c. | Personal and Advertising Injury | $1,000,000 |
| d. | Each Occurrence | $1,000,000 |
| e. | Fire Damage (any one fire) | $ 100,000 |
| f. | Medical Expenses (any one person) | $ 5,000 |
| g. | Contractual Liability Coverage for all written Contracts. | |
| h. | Exclusions X, C, U (Explosion, Collapse, Underground) will be deleted. | |

2.  Automobile Liability Coverages - Any automobile, with Combined Single Limit of $1,000,000.

3.  Excess Liability - Umbrella Form, with Each Occurrence and Aggregate Limit of $5,000,000.

4.  Workmen's Compensation and Employer's Liability Insurance with Limits set forth under the State Regulations governing each workman employed in, about or upon the Project as provided in each and every statue applicable to Workmen's Compensation and Employer's Liability.

The Certificate of Insurance shall state:

**Bozzuto Construction Company, 237 King Street Partners, LLC, 237 King Partners, LLC and Bozzuto & Associates, Inc., including all subsidiaries, affiliated or associated companies, corporations, limited partnerships, limited liability companies or other related entities are additional insured with respect to liability for work performed on their behalf by Dale Waterproofing Systems, Inc.. All such entities and persons shall be additional insureds under endorsements to the Subcontractor's General Liability policy.**

Certificates of Insurance shall be forwarded to the General Contractor. The certificate shall state that the policy shall not be cancelled or otherwise amended without first providing the Owner, the General Contractor and any mortgage lenders with thirty (30) days advance notice by registered mail of said cancellation. The Subcontractor acknowledges and agrees that a "Hold Harmless" made out in the name of the General Contractor and Owner is part of this Subcontract and shall include the following language:

The Subcontractor hereby indemnifies the General Contractor, the Owner, and their respective officers, directors, agents and employees, and lending institutions, and holds each of them harmless from and against any and all liability, suits, action, demands, loss or damage (just or unjust) and all costs or fees including, without limitation, attorneys' fees, associated therewith, on account of injuries to person or property, including accidental death and damage to adjoining structures and premises, occurring on the site of the Project, or in connection with the work, or by reason of the operations under this contract, whether or not such liability be the result of negligence, errors or omissions, acts or actions, or for any other reasons or causes of this Subcontractor, his agents, servants, employees and contractors.

At least seven (7) days prior to commencing any work covered by the Contract, the Subcontractor shall furnish to the General Contractor a certificate or certificates in triplicate of the insurance required under the foregoing provisions.  Such certificates shall list the various coverages and shall contain, in addition to any provisions hereinbefore required, a provision that it will be automatically renewed upon expiration and continued in full force until final acceptance by the Owner and General Contractor of all work covered by the Subcontract and the Contract, including the period for all warranty work under the Subcontract and Contract, unless the General Contractor is given written notification as described above.  Upon request, the Subcontractor shall furnish the General Contractor with a certified copy of each policy and endorsement.  All insurance required to be procured and maintained as aforesaid must be procured from insurance companies approved by the General Contractor and authorized to do business in the and/or the State of the Project.  If at any time the above policies shall be cancelled, terminated or modified so that the insurance is not in effect as above required, then, if the General Contractor shall so direct, the Subcontractor shall suspend performance of the work covered in the Subcontract.  If the said work is so suspended, no extension of time shall be due on account thereof.  If said work is not suspended, then the General Contractor may at its option obtain insurance affording coverage equal to that afforded above and the cost of such insurance shall be deducted in full amount from the monthly requisition of payment due the Subcontractor.

Subcontractor expressly waives all rights of recovery against the Owner, the General Contractor and such other parties as are covered by Subcontractor's insurance coverages pursuant to the foregoing provisions.  Subcontractor will ensure that its subcontractors also waive all such claims covered by any insurance.

The abovesaid Subcontractor's policies shall be primary insurance for all claims related to the Subcontract, with all policies of the Owner, the General Contractor or others being secondary non-contributory policies.  Neither the procurement nor the maintenance of any type of insurance by the Owner or the General Contractor shall in any way be construed or be deemed to limit, discharge, waive or release the Subcontractor from any of the obligations and risks imposed upon him by the Contract or Subcontract or by law or to be a limitation on the nature or extent of such obligations and risks.

Any insurance not described above which this Subcontractor desires for his own protection shall be at his own responsibility and at his own expense.



EXHIBIT "3" CONTINUED

## ACORD™  CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YY) |
| XX/XX/XX |

| PRODUCER | Phone Number | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

Your Agent
Street Address
City, State  Zip Code

| COMPANIES AFFORDING COVERAGE |
| --- |

| COMPANY A | ABC Insurance Company |

| INSURED | COMPANY B | |

Dale Waterproofing Systems, Inc.
1155 Phoenixville Pike
Suite 113
West Chester, PA  19380

| COMPANY C | |
| COMPANY D | |

**SAMPLE**

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EFFECTIVE DATE (MM/DD/YY) | LIMITS | |
| --- | --- | --- | --- | --- | --- | --- |
| A | GENERAL LIABILITY | XXXX1234567 | XX/XX/XX | XX/XX/XX | GENERAL AGGREGATE | $ 2,000,000 |
| | X  COMMERCIAL GENERAL LIABILITY | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | CLAIMS MADE  X  OCCUR | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | EACH OCCURRENCE | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | FIRE DAMAGE (Any one fire) | $ 100,000 |
| | X  POLICY | | | | MED EXP (any one person) | $ 5,000 |
| A | AUTOMOBILE LIABILITY | XXXX1234567 | XX/XX/XX | XX/XX/XX | | |
| | X  ANY AUTO | | | | COMBINED SINGLE LIMIT | $ 1,000,000 |
| | ALL OWNED AUTOS | | | | | |
| | SCHDULED AUTOS | | | | BODILY INJURY (Per person) | $ - |
| | X  HIRED AUTOS | | | | | |
| | X  NON OWNED AUTOS | | | | BODILY INJURY (Per accident) | $ - |
| | _____ | | | | | |
| | _____ | | | | PROPERTY DAMAGE | $ - |
| A | GARAGE LIABILITY | XXXX1234567 | XX/XX/XX | XX/XX/XX | AUTO ONLY – EA ACCIDENT | $ - |
| | ANY AUTO | | | | OTHER THAN AUTO ONLY | $ - |
| | _____ | | | | EACH ACCIDENT | $ - |
| | _____ | | | | AGGREGATE | $ - |
| A | EXCESS LIABILITY | XXXX1234567 | XX/XX/XX | XX/XX/XX | EACH OCCURRENCE | $ 5,000,000 |
| | X  OCCUR  CLAIMS MADE | | | | AGGREGATE | $ 5,000,000 |
| | DEDUCTIBLE | | | | | |
| | RETENTION | | | | | $ - |
| A | WORKERS COMPENSATION | XXXX1234567 | XX/XX/XX | XX/XX/XX | X  WC STATUTORY LIMITS | |
| | EMPLOYERS' LIABILITY | | | | X  OTHER | |
| | THE PROPRIETOR/ | | | | EL EACH ACCIDENT | $ 100,000 |
| | PARTNERS/EXECUTIVE  INCL | | | | EL DISEASE – POLICY LIMIT | $ 500,000 |
| | OFFICERS ARE:  EXCL | | | | EL DISEASE – EA EMPLOYEE | $ 100,000 |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

ADDITIONAL INSUREDS: SEE NEXT PAGE

| CERTIFICATE HOLDER | CANCELLATION |
| --- | --- |
| BOZZUTO CONSTRUCTION COMPANY 740 SPRINGDALE DR., SUITE 130 EXTON, PA 19341 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL MAIL 30 DAYS PRIOR WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT. |
| ADDITIONAL INSUREDS: SEE NEXT PAGE | AUTHORIZED REPRESENTATIVE |

| ACORD 25-S (1/95) | 7-55 | ACORD CORPORATION 1988 |



**EXHIBIT "5" CONTINUED**

## <u>ADDITIONAL INSUREDS</u>

Bozzuto Construction Company, 237 King Street Partners, LLC, 237 King Partners, LLC and Bozzuto & Associates, Inc., including all subsidiaries, affiliated or associated companies, corporations, limited partnerships, limited liability companies or other related entities are additional insured with respect to liability for work performed on their behalf by Dale Waterproofing Systems, Inc..  All such entities and persons shall be additional insureds under endorsements to the Subcontractor's General Liability policy.

**END OF EXHIBIT "5"**



## <u>CERTIFICATE OF SERVICE</u>

I, Matthew H. Dempsey, Esquire, hereby certify that on the below date, a true and correct

copy of Bozzuto Construction Company's Statement of Joinder Claim was served as follows:

Lane F. Kelman, Esq.
Cody M. Wolpert, Esq.
Cohen Seglias Pallas Greenhall & Furman PC
1600 Market Street 32nd Floor Philadelphia, PA 19103
lkelman@cohenseglias.com
cwolpert@cohenseglias.com

Dale Waterproofing Systems, Inc.
1155 Phoenixville Pike, Suite 113
West Chester, PA 19380
*Via FedEx Overnight Mail*
*Via Regular Mail*

Date:  September 9, 2022          */s/ Matthew H. Dempsey*
                                        Matthew H. Dempsey, Esquire