# EXHIBIT B



**Tina Worsley**
Sr. Claims Specialist

The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

<u>**Certified Mail – Return Service Requested**</u>

June 14, 2022

<u>**Via E-mail (mdempsey@hornwilliamson.com)**</u>
<u>**and Certified Mail**</u>
Matthew Dempsey, Esq.
Horn Williamson, LLC
2 Penn Center, Suite 1700
Philadelphia, PA 19102

    Re: **Cincinnati Insurance Company's Response to Bozzuto Construction Company's Demand to Defend and Indemnify**

        **Company:**     Cincinnati Insurance Company
        **Cincinnati Claim No.:** 23594992
        **Named Insured:**  Dale Waterproofing Systems, Inc.
        **Policy No.:**    EPP 0215948
        **Policy Period:**   October 22, 2013 to October 22, 2014
        **Project:**     Malvern East King Street
        **Owner:**      237 King Partners, LLC

Dear Mr. Dempsey:

   Cincinnati Insurance Company ("Cincinnati") acknowledges receipt of your April 29, 2022 correspondence addressed to Dale Waterproofing Systems, Inc. ("Dale"), wherein you request both that (1) Dale agree to defend and indemnify your client, Bozzuto Construction Company ("Bozzuto") pursuant to a subcontract between Dale and Bozzuto, and (2) Cincinnati also agree to defend and indemnify Bozzuto as an additional insured to Cincinnati's policy issued to Dale -- in connection with the Arbitration Demand (the "Underlying Action") initiated by the owner of 237 East King Street (the "Owner").

   I am writing only in response to your additional insured tender to Cincinnati. I will allow counsel for Dale to initially respond to your tender directed to Dale under the subcontract.

   Cincinnati has reviewed your tender, the Arbitration Demand and the Cincinnati Policy issued to Dale (the "Policy"). That review has raised issues concerning whether the damages alleged are potentially covered by the Cincinnati Policy, whether Bozzuto and/or Dale provided timely notice of this matter, and whether any delay in providing notice prejudiced Cincinnati and/or your defense. Accordingly, at this time, Cincinnati is continuing to investigate this claim.

I am writing to request further information from you about this matter to allow us to complete our initial evaluation. **While we continue our investigation, we are not, at this time, agreeing to defend or indemnify Bozzuto. We also, however, are not denying coverage to Bozzuto either at this time. Rather, we are conducting a further investigation into the facts of this matter, subject to a full reservation of rights** – including the rights, if applicable, to defend Bozzuto or, alternatively, to deny coverage, including a defense and indemnity, to Bozzuto. At this time, we have insufficient information to make a coverage determination. Please let us know when the claims were first made concerning the water penetration issue at the Project and when the damages occurred and manifested. If the damages occurred and manifested during the Cincinnati Policy period, we do not have any record of the claims being reported to us either by you or Dale.

The basis for our preliminary evaluation is discussed below. We invite you to provide us with any information that you believe supports your contention that Bozzuto is entitled to coverage, including a defense, for the Underlying Action. We also ask that you provide us with the information requested in this letter so that we may complete our initial investigation and provide you with a decision as to whether we will defend Bozzuto (under a reservation of rights) or will deny coverage to Bozzuto for the Underlying Action.

Meanwhile, Cincinnati reserves all rights to deny a defense to Bozzuto and to deny indemnity for any judgement or settlement in the Underlying Action – for the reasons detailed herein. Cincinnati further reserves all rights to file a declaratory judgment action seeking a declaration of its rights and duties, if any, in connection with this matter; deny a defense and withdraw from the defense; deny indemnity for any settlement or damages that may be awarded in the Underlying Action; and intervene in the Underlying Action and request special jury interrogatories concerning matters that may impact coverage.

If you have any questions or believe our comments and determinations to be incomplete or incorrect, please let us know as soon as possible. Furthermore, if you disagree with any conclusions set forth in this letter or have any additional information or material that you would like us to consider, please let us know. Also, should you receive any amended arbitration demand or civil action complaint or other pleading, please forward any such pleading to us for our review and consideration – so that we can reevaluate our coverage position in light of any subsequent allegations.

Cincinnati reserves the right to supplement or amend the positions taken in this letter, and reserves any and all rights to disclaim or limit coverage under the Policy and the law, including pursuant to any policy provision, definition, term, condition, or exclusion not expressly cited below. Please refer to the Policy for a complete discussion of the coverage provided. Should you require a copy of that Policy, please let me know.

## BACKGROUND

We understand the following based upon materials provided to us including the Arbitration Demand, Arbitration Agreement and Subcontract Agreement between Dale and Bozzuto. In summarizing these materials below, we by no means wish to express any opinion about the veracity thereof.

### The Arbitration Demand

According to the Arbitration Agreement, the Owner initiated proceedings in the Chester County Court of Common Pleas on March 5, 2019 by Writ of Summons in the case captioned, *237 King Partners, LLC v. Bozzuto Construction Company*, Case No. 2019-02808. On August 16, 2019, the Owner initiated an Arbitration Demand against Bozzuto asserting claims of construction deficiencies in connection with a residential apartment complex and Bozzuto's failure to remedy the same. We understand that Bozzuto disputes that it is responsible for the water penetration at the Project. In its Arbitration Demand, the Owner is seeking monetary damages in excess of one million dollars and/or remedial work to its property. The Arbitration Agreement further provides that Bozzuto agreed to further investigate the water penetration issues and perform additional remediation of the water penetration issues.

Dale is not listed as a party to the Arbitration Demand.

The October 2019 Arbitration Agreement between Bozzuto and the Owner states that:

> **WHEREAS**, the Owner claims that Bozzuto's construction caused, and continues to cause, water penetration into the garages and building envelope at the Project (the "Claims") and has demanded that Bozzuto repair and remediate the conditions giving rise to the Claims; and ...

> **WHEREAS**, the Owner maintains that, as of this date, the water penetration issues have not been satisfactorily resolved and/or addressed; and

The above statements indicate that damages began prior to the Agreement to Arbitrate. The statements further indicate that the Owner told you about the damages and requested that you remediate and that you apparently did some remediation.

As discussed below, the Cincinnati Policy provides certain coverage for damages because of "property damage" that occurred during the policy period. But, there is nothing in the arbitration demand, mediation demand or any other document that you have provided that indicates when the damages first occurred and manifested; however, given the statements in the arbitration agreement, we understand that you received prior notice of complaints.

**Please provide copies of all documents and correspondence by which you received notice of the water penetration issues and/or that reflect when the damages occurred and manifested.** To the extent that there might be coverage under the Cincinnati Policy, you and our insured, Dale, have a duty to cooperate and provide certain information to us. At this point, we are investigating whether you and/or Dale breached these cooperation provisions by failing to provide us timely notice of any prior claim for damages. As such, Cincinnati reserves all rights with respect to a defense of late notice.

## The Subcontract Agreement

Bozzuto and Dale reportedly entered a Subcontract Agreement (the "Agreement") dated July 31, 2012, for work to be performed at Malvern East King Street, located at 237 East King Street, Malvern, Pennsylvania (herein the "Project"). The Scope of Work provision of the Agreement provides, in part, that:

### ARTICLE 1. SCOPE OF WORK

Subcontractor agrees to perform and furnish all of the work, labor, materials, as herein specified, and plant equipment, tools, scaffolds, hoists, and everything of sort for accomplishing the work.

The Agreement also includes a provision regarding liability for damages and injury. That provision provides, in part, that:

### ARTICLE 17. LIABILITY FOR DAMAGES AND INJURY

a. Subcontractor shall defend, indemnify, hold harmless and reimburse … Contractor and their agents, officers and employees … from all claims, damages , losses and expenses (including but not limited to attorney's fees and costs) attributable to … injury to or destruction of tangible property, including but not limited to the loss of use resulting therefrom, arising out of or in connection with the performance of the Work or any negligent act or omission of Subcontractor at to in connection with the Project.

b. Subcontractor shall be liable to the Contractor for all costs the Contractor incurs as a result of Subcontractor's failure to perform this Agreement in accordance with its terms … Subcontractor's liability shall include but is not be limited to … (2) the Contractor's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work (3) warranty and rework costs; (4) liability to third parties;

(5) excess procurement costs; (6) consultant's fees; and (7) attorney's feed and related costs.

In your Letter, you stated that the Owner alleges that there is extensive leaking through the waterproofing system that Dale installed at the Project. We note that the Owner further alleges that the leaking has caused damage, including property damage to the Project. Bozzuto alleges that Dale is responsible for the excessive leaking and property damage.

Bozzuto has looked to Cincinnati to defend and indemnify it as well as, provide additional insured coverage to Bozzuto pursuant to Cincinnati's Policy issued to Dale. This letter preliminarily responds to those requests.

## THE CINCINNATI POLICY

Cincinnati issued Policy EPP 0215948 to Dale (and other named insureds) for the period effective October 22, 2013 to October 22, 2016; however, Dale cancelled the Policy after one year of coverage. Thus, the Policy was only in effect from October 22, 2013 to October 22, 2014. The Cincinnati Policy provides certain commercial general liability and commercial umbrella liability coverage subject to all of the terms, provisions, definitions, exclusions, conditions, and limitations in the Policy. The Policy is subject to, among other things, a $1 million each-occurrence limit, a $3 million general aggregate limit, and a $3 million products-completed operations aggregate limit. The commercial umbrella liability policy is subject to a $5 million each-occurrence limit and a $5 million aggregate limit.

## DISCUSSION OF COVERAGE

For the reasons discussed below, Cincinnati requests further information from you about this matter to allow us to complete our initial evaluation. As such, pending the completion of its investigation, Cincinnati reserves all rights to deny a defense and indemnity to Bozzuto in the Underlying Action.

### Additional Insured Provisions in the Policy

The Cincinnati policy was issued to first named insured "Modern Home Insulators of PA" and Dale Waterproofing Systems, Inc. is added as an additional named insured by way of endorsement. Bozzuto is neither listed on the Policy as a named insured or expressly named additional insured.

There are certain automatic additional insured provisions to the Cincinnati Policy but, as discussed below, Bozzuto may not qualify as an insured for purposes of the Underlying Action.

The Cincinnati policy contains a Broadening Endorsement to the CGL coverage part that provides, in part:

9. **Automatic Additional Insured - Specified Relationships**

**a.** The following is hereby added to **SECTION II - WHO IS AN INSURED:**

**(1)** Any person or organization described in Paragraph **9.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:

(a) A written contract or agreement; or

(b) An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued,

is an insured, provided:

(a) The written or oral contract or agreement is:

1) Currently in effect or becomes effective during the policy period; and

2) Executed prior to an "occurrence" or offense to which this insurance would apply; and

(b) They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

**(2)** Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

\*    \*    \*

(f) Any person or organization with which you have agreed per Paragraph **9.a.(1)** above to provide insurance, but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf. A person or organization's status as an insured under this provision of this endorsement continues for only the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part. If there is no written contract or agreement, or if no period of time is required by the written contract or agreement, a person or organization's status as an insured under this

**Mailing Address:** PO BOX 399 Hockessin, DE 19707
(302) 824-1184 office ▪ (844) 754-3391 fax

endorsement ends when your operations for that insured are completed.

**(3)** Any insurance provided to an additional insured designated under Paragraph **9.a.(2):**

    (a) Subparagraphs **(e)** and **(f)** does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard";

    (b) Subparagraphs **(a), (b), (d), (e)** and **(f)** does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence or willful misconduct of the additional insured or their agents, "employees" or any other representative of the additional insured; or

    (c) Subparagraph **(f)** does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

        1) Defects in design furnished by or on behalf of the additional insured; or

        2) The rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

            a) The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

            b) Supervisory, inspection, architectural or engineering activities.

        3) "Your work" for which a consolidated (wrap-up) insurance program has been provided by the prime contractor-project manager or owner of the construction project in which you are involved.

  b. Only with regard to insurance provided to an additional insured designated under Paragraph **9.a.(2)** Subparagraph **(f)** above, **SECTION III LIMITS OF INSURANCE** is amended to include:

The limits applicable to the additional insured are those specified in the written contract or agreement or in the Declarations of this Coverage Part, whichever are less. If no limits are specified in the written contract or agreement, or if there is no written contract or agreement, the limits applicable to the additional insured are those specified in the Declarations of this Coverage Part. The limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

The terms "you" and "your" as used in the above quoted policy provisions refers to the named insured, here Dale.

**Cincinnati reserves all rights to limit or deny coverage to Bozzuto to the extent that it does not qualify as an additional insured for purposes of the Underlying Action.**

Cincinnati has received a copy of the Bozzuto-Dale Subcontract and the Insurance Requirements in Exhibit 5 thereto. Cincinnati acknowledges that those materials constitute a written contract requiring Dale to provide certain additional insured coverage for Bozzuto with respect to liability for work performed on Bozzuto's behalf by Dale; however, subsection 9.a.(2)(f) above limits any such additional insured coverage only to "liability arising out of "[Dale's] work" performed for that additional insured by [Dale] or on [Dale's] behalf" and that status as an additional insured under this provision of this endorsement continues for only the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part.

It is not yet clear whether Bozzuto has any liability for work performed on its behalf by Dale, or because of some other reason/entity. Nor is it clear that any damage occurred during the Policy's policy period.

Additionally, even if Bozzuto were an additional insured, coverage still may not exist on account of one or more of the exclusions in the additional insured provision cited above. As noted, subparagraph (f) does not apply to:

* * *

(b) "bodily injury" or "property damage" arising out of the sole negligence or willful misconduct of the additional insured or their agents, "employees" or any other representative of the additional insured; or

(c) "bodily injury" or "property damage" arising out of either (1) defects in design furnished by or on behalf of the additional insured, or (2) the rendering of, or failure to render, any professional architectural, engineering or surveying services (including those

noted above), or (3) Dale's work for which a consolidated (wrap-up) insurance program has been provided by the prime contractor-project manager or owner of the construction project in which Dale is involved.

The Underlying Action alleges wrongdoing on the part of Bozzuto (which we understand Bozzuto denies). If Bozzuto was negligent, it is possible that coverage may be precluded by the provision barring coverage for sole negligence or willful misconduct of the additional insured or their agents, "employees" or any other representative of the additional insured. Cincinnati reserves all rights to further deny coverage for this reason – as well as to the extent that any wrap-up insurance program exists.

### <u>Cincinnati Reserves The Right To Deny Coverage To The Extent That the Owner Does Not Allege "Property Damage" Caused By An "Occurrence" And Which Damage Occurred During the Policy Period</u>

Coverage under the Policy applies to "property damage" only if, among other things, the "property damage" is caused by an "occurrence"; the "property damage" occurs during the policy period; and prior to the "coverage term" in which "property damage" occurs, the Owner did not know that the "property damage" had occurred or had begun to occur, in whole or in part.

The Policy defines "property damage" to mean:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

At this point in time, Cincinnati has not received any information indicating that any "property damage" occurred, or even allegedly occurred, during the Cincinnati policy period. The Owner, in its Arbitration Demand and Arbitration Agreement, does not identify the date of the alleged "property damage" or the date on which such damage manifested. Similarly, your demand letter does not indicate when the alleged "property damage" occurred or manifested. Additionally, your letter fails to provide that the alleged damage occurred during the Policy period (October 22, 2013 to October 22, 2014). And, to the extent the Bozzuto seeks damages for any "property damage" that occurred outside of the Policy's policy period, there is no coverage for Bozzuto under the Policy. **Please let us know** if you have any information as to when any damage (relating in some way to Dale's work) first occurred and manifested. In the interim, Cincinnati reserves all rights to limit or deny coverage to Bozzuto to the extent that any "property damage" at issue did not occur during the Cincinnati policy period.

Cincinnati also reserves the right to deny coverage to the extent that any property damages were not caused by an "occurrence". The term "occurrence" is defined in the Cincinnati Policy as

Moreover, an allegation of "property damage" occurring during the Cincinnati policy period is not enough to implicate coverage, the pleading against the insured (here, the Arbitration Demand) must also allege that the damage was caused by an "occurrence." The Cincinnati Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Under Pennsylvania law, the law which we believe governs the interpretation of the Cincinnati policy, no "occurrence" is alleged. The Underlying Action alleges various defects and deficiencies in construction, and that such defects and deficiencies damaged the work and Project. Such faulty workmanship (whether breach of contract, breach of warranty, negligence or otherwise) causing damage to the work itself and/or causing other foreseeable damage, is not an "occurrence" as Pennsylvania courts have construed that term. Similarly, to the extent that the Owner alleges breach of contract and breach of warranty claims against Bozzuto (which presumably is what is alleged since this is subject to arbitration), those claims do not aver damage caused by an "occurrence."

For the foregoing reasons, even if Bozzuto qualifies as an additional insured, Cincinnati reserves all rights to deny "property damage" coverage for Bozzuto.

## Policy Exclusions May Further Exclude Coverage

The Policy contains a number of additional terms, provisions, and exclusions that may further limit or exclude coverage for Bozzuto. While certain specific exclusions are called to your attention below, Cincinnati reserves all rights to disclaim or limit coverage based on any exclusion, condition, term, or provision in the Policy whether specifically discussed below or not. Cincinnati does not waive, and shall not be estopped from asserting, any defenses available under the Policy or at law.

## Contractual Liability exclusion

The Policy excludes from coverage:

    **b.**    **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)**    That the insured would have in the absence of the contract or agreement; or

    **(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the

execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

The Policy defines "insured contract" to mean, among other things:

> **f.**    That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury," "property damage" or "personal or advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

To the extent that the Underlying Action alleges that Bozzuto breached any contract or warranty, the Owner may seek the recovery of damages based on Bozzuto's contractually assumed duties (and which are not of a tort nature). Cincinnati reserves all rights to further deny coverage to the extent precluded by this exclusion.

**Exclusions for Damage to Property**

The Cincinnati Policy also contains a "Damage to Property" exclusion, which bars coverage for "property damage" to:

\* \* \*

> (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

> Paragraphs **(3)**, **(4)**, **(5)**, and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

To the extent that the Underlying Action avers that Bozzuto's/Dale's work is defective, requiring some sort of repair, Cincinnati reserves all rights to further deny coverage to the extent precluded by the foregoing.

### Exclusions for Damage to Your Work, Your Product, Impaired Property and Recalls

The Cincinnati Policy contains other exclusions for "property damage" to "your work", "your product" and "impaired property", as well as for recalls. The terms "you" and "your" refer to the named insured, Dale. Those exclusions provide that the insurance does not apply to:

**k.**    **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**    **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property;

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The terms "your work" and "your product" are defined in the policy as:

"Your product":

    a.   Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           (a) You;

           (b) Others trading under your name; or

           (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.   Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

"Your work":

    a.   Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

    b.  Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

      (2) The providing of or failure to provide warnings or instructions.

"Impaired property" is defined in the policy as:

    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.   The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of a contract or agreement.

Cincinnati reserves all rights to deny coverage based on any of the foregoing exclusions. Here, for instance, the your product exclusion precludes coverage for any "property damage" to Dale's product arising out of it or any part of it. Similarly, the your work exclusion bars coverage for "property damage" to Dale's work arising out of it or any part of it and included in the "products-completed operations hazard". **Please let us know if any of Dale's work was performed by any subcontractor.**

The impaired property exclusion bars coverage for any "property damage" to any "impaired property" that has not been physically injured and which arises of out a defect/deficiency in Dale's work or product. Here, to the extent that the Underlying Action seeks damages for damage to "impaired property" that has not been physically injured, the impaired property exclusion may preclude any coverage.

Cincinnati reserves all rights to further deny coverage based on the above exclusions.

    5.    <u>**Exclusion – Contractors - Professional Liability**</u>

The Cincinnati Policy contains an EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY endorsement that provides:

1.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    a.  Providing engineering, architectural or surveying services to others; and

    b.  Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2.  Subject to Paragraph 3., below, professional services include:

    a.  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    b.  Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3.  Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with construction work you perform.

Cincinnati reserves all rights to further deny coverage to the extent precluded by the foregoing exclusion. Should you believe that this matter is covered, please provide us with information concerning the nature of any professional or other services Bozzuto and/or Dale provided in connection with this Project.

### 6.    Fungi Or Bacteria Exclusion

The Cincinnati policy contains a Fungi or Bacteria Exclusion endorsement that provides the insurance does not apply to:

Fungi or Bacteria

a.  "Bodily injury" or "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

    (1) Inhalation of;

    (2) Ingestion of;

    (3) Contact with;

(4) Absorption of;

(5) Exposure to;

(6) Existence of; or

(7) Presence of,

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

b.  Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

c.  Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

(1) The existence of "fungi" or bacteria;

(2) The prevention of "fungi" or bacteria;

(3) The remediation of "fungi" or bacteria;

(4) Any operation described in Paragraph A. 2. b. above;

(5) "Your product"; or

(6) "Your work"; or

d.  Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs A. 2. a., b. or c. above;

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product in-tended for human ingestion.

For the purposes of this endorsement, "Fungi" means "any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."

We understand that this matter involves water infiltration claims. To the extent that the Underlying Action seeks recovery of any damages relating to fungi or bacteria and excluded by the foregoing exclusion, Cincinnati reserves all rights to further deny or limit coverage.

### 7.    **Additional Insured Prior Knowledge exclusion**

The Policy contains an Additional Insured Prior Knowledge exclusion (exclusion r.) which provides the policy does not apply to:

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional inured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit:

Reports all, or any part of the "bodily injury" or "property damage" to us or any other insurer;
Received a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";
First observes or reasonably should have first observed, the "bodily injury" or "property damage";
Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that "bodily injury" or "property damage" had occurred or had begun to occur; or
Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

As noted above, it is not clear when any damage occurred or manifested. Nor do we know when Dale's work was completed. The Bozzuto-Dale subcontract is dated July 31, 2012 – over a year before the Cincinnati Policy incepted. To the extent that any damage first occurred prior to the policy period and was known to Bozzuto, Cincinnati reserves the right to deny coverage based on the foregoing exclusion r.

## Umbrella Coverage Part

The Cincinnati Policy also provides certain umbrella liability coverage which applies to "ultimate net loss" in excess of underlying insurance – or which is excluded or noted insured by underlying insurance. Cincinnati reserves all rights to deny or limit coverage under the Umbrella Liability Coverage Form to the extent that Bozzuto is not an additional insured and/or to the extent Bozzuto does not face liability for damages that fall within the Insuring Agreement to that Coverage Part and/or coverage is preclude by one or more of the exclusions to that Coverage Part.

## Other Insurance

The Policy contains an "Other Insurance" provision that provides that Cincinnati's obligations under the Policy may be affected by the presence of other insurance. To the extent that Cincinnati has any obligation to provide Bozzuto with coverage, other insurers also may have such an obligation, including, but not necessarily limited to, Bozzuto's other insurers as well as perhaps prior and subsequent insurers of Dale – depending on when any damages occurred and whether Bozzuto is an additional insured to any of those policies.

Cincinnati's obligation, if at all, to provide coverage to Bozzuto may be limited to Cincinnati's appropriate share. Cincinnati reserves the right to apply the terms of the Other Insurance provision appearing in the Policy to any determination that Cincinnati owes coverage to Bozzuto. Cincinnati also reserves the right to deny coverage to the extent precluded or limited by the Other Insurance provision in the Policy.

To the extent that you have not already done so, you should promptly put on notice of the Underlying Action all other insurers providing coverage to Bozzuto (as a Named Insured, additional insured or otherwise) for any time period at issue in the Underlying Action. Cincinnati reserves all rights to deny or limit coverage to the extent that Bozzuto's failure to give, or delay in giving, notice of this matter to any other insurer prejudices the availability of any other coverage that may exist.

# CONCLUSION

For the reasons stated above, Cincinnati is continuing to investigate this claim subject to a full reservation of rights. At this time, it remains unclear as to the manifestation date of the water penetration issues. Also, it is premature at this time to determine if the water penetration issues arose as a result of Dale's work on the Project. We cannot make a decision on the defense and indemnity claim until certain information is received. Thus, to assist in our continued investigation of this matter, please provide us with the following (in addition to what is requested above):

1. Information and documents concerning all other subcontractors that worked on the Project in addition to Dale and Bozzuto.

2. Information concerning when Dale performed its work at this project and when Dale's work was completed;

3. Information concerning when any damages at issue in the Underlying Action (related to Dale's work) occurred, first occurred and manifested – and when the Owner, Bozzuto and/or Dale first learned of any such (alleged) damages;

4. Copies of any complaints, demands, letters or other information reflecting any complaints, damages and/or deficiencies related to Dale's work;

5. Copies of all insurance policies and certificates of insurance identifying any insurance that may provide coverage to Bozzuto for the claims in the Underlying Action, including but not limited to any policy(ies) issued to Bozzuto as a Named Insured or any policy(ies) pursuant to which Bozzuto may be entitled to any additional insured coverage;

7. Copies of your notice/tender letters to any other subcontractors or other insurers, and the responses you receive. We understand that you have tendered Bozzuto's defense to a number of different subcontractors and their respective insurers. Please provide us with copies of all such letters and the responses thereto.

8. Copies of all documents regarding notification of the water penetration issues.

The foregoing is not intended as a waiver, modification or alteration of any of the terms, conditions, limitations, endorsements or exclusions of the Policy. Cincinnati does not waive, and shall not be estopped from asserting, any defenses available under any Policy and/or at law. Cincinnati reserves all of its rights under any Policy and at law. Cincinnati also expressly retains the ability to reserve additional rights or disclaim coverage in the future on any other grounds.

This letter is based upon information presently available to Cincinnati. Cincinnati reserves the right to supplement its coverage position for reasons based upon the terms, conditions, limitations, endorsements, and exclusions set forth in the Policy and/or available under the law. If any further investigation leads us to believe that any other provisions of the Policy either offer to fail to offer coverage or trigger a duty to defend and/or indemnify, we will advise you accordingly. Any additional investigation on the part of the Company shall not be construed as a waiver of any of the Company's rights to disclaim coverage upon other grounds, nor should it be construed as an admission of coverage by the Company.

Finally, to the extent that you disagree with Cincinnati's above statements, we would appreciate hearing the basis for any disagreement. To the extent that you possess or develop information that you believe would cause Cincinnati to alter its preliminary assessment that this matter does not appear to implicate coverage under the Cincinnati Policy issued to Dale and/or to the extent that any amended pleading is filed against Bozzuto, please provide that information to us as soon as possible.

If you feel that we are incorrect in our assessment of the coverage issues or if you have questions, comments or objections regarding the contents of this letter or desire to discuss further the content of this letter or the claim in general, please feel free to contact me.


Sincerely,

Tina Worsley
Sr. Claims Specialist

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."


CC: AP Benefits Advisors