# EXHIBIT D



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance

**Tina Worsley**
*Sr. Claims Specialist*

September 27, 2022

**Via Certified Mail**
Dale Waterproofing Systems, Inc.
1155 Phoenixville Pike, Suite 113
West Chester, Pa 19380
Attn: Thomas J. Dale, President

Re:   237 King Partners, LLC, a/k/a/ 237 East King Partners, LLC, v. Bozzuto Construction Company

|  |  |
|---|---|
| **Company:** | Cincinnati Insurance Company |
| **Cincinnati Claim No.:** | 23594992 |
| **Named Insured:** | Dale Waterproofing Systems, Inc. |
| **Policy No.:** | EPP 0215948 |
| **Policy Period:** | October 22, 2013 to October 22, 2014 |
| **Project:** | Malvern East King Street |
| **Owner:** | 237 King Partners, LLC |

Dear Mr. Dale:

The Cincinnati Insurance Company ("Cincinnati") has received notice of the Motion to Join Dale Waterproofing Systems, Inc. ("Dale") as an Additional party in the private Arbitration captioned *237 King Partners, LLC, a/k/a/ 237 East King Partners, LLC, v. Bozzuto Construction Company* (the "Underlying Action"). The purpose of this letter is to advise Dale of Cincinnati's determination of its potential obligation, if any, to provide coverage to Dale for defense and indemnity under Cincinnati policy number EPP 0215948 (the "Policy" or the "Cincinnati Policy"), effective for the period of October 22, 2013 to October 22, 2014, in connection the Underlying Action.

I am writing to you as the person responsible for handling insurance-related communications for Dale. **If you are not that person, please let me know and please let me know to whom such communications should be directed in the future.**

Please be advised that, upon review of the Cincinnati Policy in conjunction with the allegations asserted in the Underlying Action and for the reasons set forth below, **Cincinnati has decided to offer Dale a defense for the Underlying Action, pursuant to a full and complete**

reservation of rights to deny coverage under the Cincinnati Policy. Cincinnati will provide this defense to you using defense counsel currently assigned to represent Dale's interest at the September 2022 site inspection at the subject property site located at 237 East King Street, Malvern Pa, 19355. The name of that attorney is Mark T. Riley, Esquire of the law firm Marshall Dennehey Warner Coleman & Goggin.

Cincinnati has reviewed the Arbitration Demand, Bozzuto's Motion for Leave to Join Dale in the Arbitration, 237 King Partners, LLC's (the "Owner") Statement of Claim, the Statement of Joinder Claim Against Dale, the Subcontract between Dale and Bozzuto and the Cincinnati Policy. That review has raised issues concerning whether the damages alleged are potentially covered by the Cincinnati Policy, whether Dale provided timely notice of this matter, and whether any delay in providing notice prejudiced Cincinnati and/or your defense. Accordingly, at this time, while Cincinnati will continue to provide a defense, that defense is provided under a full reservation of rights.

We set forth below the bases for Cincinnati's reservation of rights, as well as ask that you provide us with the information requested in this letter so that we may complete our investigation.

Please let us know when you were first advised of any water penetration issues (or claims related thereto) at the Project and when, to the nest of your knowledge, the damages first occurred and manifested. If the damages occurred and manifested during the Cincinnati Policy period, we do not have any record of the claims being reported to us either by you or Bozzuto. Cincinnati reserves its rights to deny coverage to the extent that the damages did not manifest during the Cincinnati policy period.

Cincinnati's offer to provide a defense to Dale for the Underlying Action is subject to a full and complete reservation of all of Cincinnati's rights and defenses, including the right to deny or limit coverage including a defense to Dale and indemnity for any judgement or settlement under the Cincinnati Policy (and any other allegedly applicable policy) with respect to the claims and damages alleged in the Underlying Action. Among other things, Cincinnati reserves the right to file a declaratory judgment action, or other claim seeking declaratory relief, to obtain a declaration of its rights and obligations if any, in connection with this matter; deny a defense and withdraw from the defense; deny indemnity for any settlement or damages that may be awarded in the Underlying Action; and, to the extent even possible since this involves an arbitration, intervene in the Underlying Action and request special jury interrogatories concerning matters that may impact coverage. Cincinnati additionally reserves the right to withdraw its defense of Dale upon a determination that Cincinnati does not owe Dale a duty to defend in the Underlying Action.

If you have any questions or believe our comments and determinations to be incomplete or incorrect, please let us know as soon as possible. Furthermore, if you disagree with any conclusions set forth in this letter or have any additional information or material that you would like us to consider, please let us know. Also, should you receive any amended arbitration demand, Motion or civil action complaint or other pleading, please forward any such pleading to us for our

review and consideration – so that we can reevaluate our coverage position in light of any subsequent allegations.

Cincinnati reserves the right to supplement or amend the positions taken in this letter, and reserves any and all rights to disclaim or limit coverage under the Policy and the law, including pursuant to any policy provision, definition, term, condition, or exclusion not expressly cited below. Please refer to the Policy for a complete discussion of the coverage provided. Should you require a copy of that Policy, please let me know.

**I.   BACKGROUND**

We understand the following based upon materials provided to us including the Arbitration Demand, the Arbitration Agreement, the Subcontract Agreement between Dale and Bozzuto, Bozzuto's Motion for Leave to Join Dale in the Arbitration, the Owner's Statement of Claim, the Statement of Joinder Claim Against Dale and the Cincinnati Policy. In summarizing these materials below, we by no means wish to express any opinion about the veracity thereof.

**A.   The Arbitration Demand**

According to the Arbitration Agreement, the Owner initiated proceedings in the Chester County Court of Common Pleas on March 5, 2019 by Writ of Summons in the case captioned, *237 King Partners, LLC v. Bozzuto Construction Company*, Case No. 2019-02808. On August 16, 2019, the Owner initiated an Arbitration Demand against Bozzuto asserting claims of construction deficiencies in connection with a residential apartment complex and Bozzuto's failure to remedy the same. On October 30, 2019, the Owner and Bozzuto removed the dispute from the AAA Arbitration forum and elected to proceed with private arbitration before the Honorable James F. Proud. We understand that Bozzuto disputes that it is responsible for the water penetration at the Project. In its Arbitration Demand, the Owner is seeking monetary damages in excess of one million dollars and/or remedial work to its property. The Arbitration Agreement further provides that Bozzuto agreed to further investigate the water penetration issues and perform additional remediation of the water penetration issues.

Dale is not listed as a party to the Arbitration Demand.

The October 2019 Arbitration Agreement between Bozzuto and the Owner states that:

> **WHEREAS**, the Owner claims that Bozzuto's construction caused, and continues to cause, water penetration into the garages and building envelope at the Project (the "Claims") and has demanded that Bozzuto repair and remediate the conditions giving rise to the Claims; and …

**WHEREAS**, the Owner maintains that, as of this date, the water penetration issues have not been satisfactorily resolved and/or addressed; and

The above statements indicate that damages began prior to the Agreement to Arbitrate (and thus prior to October 2019). The statements further indicate that the Owner told Bozzuto about the damages and requested that Bozzuto remediate and that Bozzuto apparently did some remediation.

As discussed below, the Cincinnati Policy provides certain coverage for damages because of "property damage" that occurred during the policy period. But, there is nothing in the arbitration demand, mediation demand or any other document that you have provided that indicates when the damages first occurred and manifested; however, given the statements in the arbitration agreement, we understand that Bozzuto, and possibly Dale, received prior notice of complaints.

**Please provide copies of all documents and correspondence by which you received notice of the water penetration issues and/or that reflect when any damages occurred and manifested.** To the extent that there might be coverage under the Cincinnati Policy, you have a duty to cooperate and provide certain information to us. At this point, we are investigating whether you breached these cooperation provisions by failing to provide us timely notice of any prior claim for damages. As such, Cincinnati reserves all rights with respect to a defense of late notice.

B.   **The Subcontract Agreement**

Dale and Bozzuto reportedly entered a Subcontract Agreement (the "Agreement") dated July 31, 2012, for work to be performed at Malvern East King Street, located at 237 East King Street, Malvern, Pennsylvania (herein the "Project"). The Scope of Work provision of the Agreement provides, in part, that:

### ARTICLE 1. SCOPE OF WORK

Subcontractor agrees to perform and furnish all of the work, labor, materials, as herein specified, and plant equipment, tools, scaffolds, hoists, and everything of sort for accomplishing the work.

The Agreement also includes a provision regarding liability for damages and injury. That provision provides, in part, that:

### ARTICLE 17. LIABILITY FOR DAMAGES AND INJURY

a. Subcontractor shall defend, indemnify, hold harmless and reimburse ... Contractor and their agents, officers and employees ... from all claims, damages, losses and expenses (including but not limited to attorney's fees and costs) attributable to ... injury to or destruction of tangible property,

  including but not limited to the loss of use resulting therefrom, arising out of or in connection with the performance of the Work or any negligent act or omission of Subcontractor at to in connection with the Project.

b. Subcontractor shall be liable to the Contractor for all costs the Contractor incurs as a result of Subcontractor's failure to perform this Agreement in accordance with its terms ... Subcontractor's liability shall include but is not be limited to ... (2) the Contractor's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work (3) warranty and rework costs; (4) liability to third parties; (5) excess procurement costs; (6) consultant's fees; and (7) attorney's feed and related costs.

A Letter received from Bozzuto states that the Owner alleges that there is extensive leaking through the waterproofing system that Dale installed at the Project. We note that the Owner further alleges that the leaking has caused damage, including property damage to the Project. Bozzuto alleges that Dale is responsible for the excessive leaking and property damage.

II.  **THE MOTION TO JOIN DALE AS AN ADDITIONAL RESPONDENT**

As previously stated, Dale was not listed as a party to the Owner's Arbitration Demand. However, on September 6, 2022, Bozzuto presented to the parties a motion to join Dale as a party to the Arbitration.

According to Bozzuto's Motion, Dale is a necessary party in the Underlying Action because its installation of the waterproofing membrane for the Project is central to the dispute between the Owner and Bozzuto. Additionally, Bozzuto alleges that Dale agreed under the Subcontract, to join as a party in any proceeding relating to its installation of the waterproofing membrane for the Project. In support of this contention, Bozzuto cites the following provision of the Subcontract:

### ARTICLE 5. SUBCONTRACTOR BOUND BY OWNER/CONTRACTOR AGREEMENT

b. In event of a dispute between Contractor and Owner involving in any way the work of subcontractor and if such dispute results in a proceeding, to which Subcontractor may become a party, then Subcontractor will join in such proceeding and will be bound by the result thereof.

Bozzuto re-alleges the above claims in its Statement of Joinder Claim against Dale. Specifically, Bozzuto alleges the following: "The Owner has initiated an arbitration proceeding against Bozzuto asserting claims relating to alleged failures with your scope of work under as subcontractor on the Project."

In its Motion and Statement of Joinder Claim, Bozzuto alleges that damages to the Project were caused by "failures concerning installation of a waterproofing membrane." Bozzuto further states in its Motion that "Dale's scope of work included installation of the waterproofing membrane." Finally, Bozzuto contends that Dale's installation of the waterproofing membrane, is related to the water intrusion and damage to the Project and thus is central to the dispute between Bozzuto and the Owner. Although a formal Complaint has not been filed, the Owner, in its Statement of Claim, does not object to Bozzuto's request to join Dale as an additional respondent in the Arbitration. Thus, it is likely that the Honorable James F. Proud will grant Bozzuto's motion and join Dale as a respondent in the matter.

### III. THE CINCINNATI POLICY

Cincinnati issued Policy EPP 0215948 to Dale (and other named insureds) for the period effective October 22, 2013 to October 22, 2016; however, the Policy was cancelled after one year of coverage. Thus, the Policy was only in effect from October 22, 2013 to October 22, 2014. The Cincinnati Policy provides certain commercial general liability and commercial umbrella liability coverage subject to all of the terms, provisions, definitions, exclusions, conditions, and limitations in the Policy. The Policy is subject to, among other things, a $1 million each-occurrence limit, a $3 million general aggregate limit, and a $3 million products-completed operations aggregate limit. The commercial umbrella liability policy is subject to a $5 million each-occurrence limit and a $5 million aggregate limit.

### IV. DISCUSSION OF COVERAGE

#### A. Cincinnati Reserves The Right To Deny Coverage To The Extent That the Owner Does Not Allege "Property Damage" Caused By An "Occurrence" And Which Damage Occurred During the Policy Period

Coverage under the Policy applies to "property damage" only if, among other things, the "property damage" is caused by an "occurrence"; the "property damage" occurs during the policy period; and prior to the "coverage term" in which "property damage" occurs, you (defined as Dale or any other named insured) did not know (per Paragraph 1.d. below) that the "property damage" had occurred or had begun to occur, in whole or in part. Paragraph 1.d. provides:

> d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

(3) First observes, or reasonably should have first observed, the "bodily-injury" or "property damage";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that 'bodily injury" or 'property damage" had occurred or had begun to occur; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

The Policy defines "property damage" to mean:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

At this point in time, Cincinnati has not received any information indicating that any "property damage" occurred, or even allegedly occurred, during the Cincinnati policy period. While the above statements and allegations indicate that water intrusion occurred at the Project, the statements fail to indicate when the water intrusion occurred at the project. The Owner, in its Arbitration Demand and Arbitration Agreement, does not identify the date of the alleged "property damage" or the date on which such damage manifested. Similarly, the Joinder Motion fails to indicate when the alleged "property damage" occurred or manifested. Additionally, we have not received any pleadings or documentation that provides that the alleged damage occurred during the policy period (October 22, 2013 to October 22, 2014).

Cincinnati is continuing to investigate whether the damages occurred and manifested during the Cincinnati policy period. **Please advise us** when Dale's work was completed. The Bozzuto-Dale subcontract is dated July 31, 2012 – over a year before the Cincinnati Policy incepted.

Cincinnati reserves all rights to deny coverage to the extent that any property damage did not occur and manifest during the Cincinnati policy period. Cincinnati also reserves the right to

deny coverage to the extent that Dale (or any other named insured or "authorized representative") knew prior to the policy period had occurred or had begun to occur, in whole or in part.

To allow Cincinnati to further investigate and evaluate this matter, **please let us know** when any "authorized representative" (as defined in the policy) (1) reported all, or any part, of the "property damage" to Cincinnati or any other insurer; (2) received a written or verbal demand or claim for damages because of the "property damage"; (3) first observed the "property damage"; (4) became aware by any means other than as described in (3) that "property damage" had occurred or had begun to occur; or (5) became aware of a condition from which "property damage" was substantially certain to occur.

Because the first named insured to the policy, Modern Home Insulators of PA, is identified as an organization (any other), the term "authorized representative" when applied to Dale includes "your 'executive officers' and directors", Dale's stockholders (unless Dale is a publicly traded organization), and Dale's "employees" (a) assigned to manage your insurance program; or (b) responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit".

**Please also let us know** if you have any information as to when any damage (relating in some way to Dale's work) first occurred and manifested. In the interim, Cincinnati reserves all rights to limit or deny coverage to Dale to the extent that any "property damage" at issue did not occur or manifest during the Cincinnati policy period.

Cincinnati also reserves the right to deny coverage to Dale to the extent that any property damages were not caused by an "occurrence". The term "occurrence" is defined in the Cincinnati Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under Pennsylvania law, the law which we believe governs the interpretation of the Cincinnati policy, no "occurrence" is alleged. The Underlying Action alleges various defects and deficiencies in construction, and that such defects and deficiencies damaged the work and Project. Such faulty workmanship (whether breach of contract, breach of warranty, negligence or otherwise) causing damage to the work itself and/or causing other foreseeable damage is not an "occurrence" as Pennsylvania courts have construed that term when defined as it is in the Cincinnati policy. Furthermore, to the extent that Bozzuto alleges a breach of contract or breach of warranty claim against Dale (which presumably is what is alleged since this is subject to arbitration), Cincinnati reserves the right to deny coverage to the extent that those claims do not aver damage caused by an "occurrence."

Notwithstanding the forgoing, Cincinnati will defend Dale in the Underlying Action, subject to a full reservation of rights.

B.  **Policy Exclusions May Further Exclude Coverage**

The Policy contains a number of additional terms, provisions, and exclusions that may further limit or exclude coverage for Dale. While certain specific exclusions are called to your attention below, Cincinnati

reserves all rights to disclaim or limit coverage based on any exclusion, condition, term, or provision in the Policy whether specifically discussed below or not. Cincinnati does not waive, and shall not be estopped from asserting, any defenses available under the Policy or at law.

1. **Contractual Liability exclusion**

The Policy excludes from coverage:

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

The Policy defines "insured contract" to mean, among other things:

f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury," "property damage" or "personal or advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

To the extent that the Underlying Action alleges that Dale may be obligated to indemnify another for their own contractual (as opposed to tort) liability, this exclusion will bar coverage for those damages. Cincinnati reserves all rights to deny coverage to Dale to the extent precluded by this exclusion.

2. **Exclusions for Damage to Property**

The Cincinnati Policy also contains a "Damage to Property" exclusion, which bars coverage for "property damage" to:

\* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraphs (3), (4), (5), and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

To the extent that the Underlying Action avers that Dale's work is defective, requiring some sort of repair, Cincinnati reserves all rights to further deny coverage to the extent precluded by the foregoing.

3. **Exclusions for Damage to Your Work, Your Product, Impaired Property and Recalls**

The Cincinnati Policy contains other exclusions for "property damage" to "your work", "your product" and "impaired property", as well as for recalls. The terms "you" and "your" refer to the named insured, Dale. Those exclusions provide that the insurance does not apply to:

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)   "Your product";

(2)   "Your work"; or

(3)   "Impaired property;

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The terms "your work" and "your product" are defined in the policy as:

"Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes:

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  (2) The providing of or failure to provide warnings or instructions.

"Your work":

  a. Means:

  (1) Work or operations performed by you or on your behalf; and

  (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes:

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

  (2) The providing of or failure to provide warnings or instructions.

"Impaired property" is defined in the policy as:

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

  a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

  b. Your fulfilling the terms of a contract or agreement.

  Cincinnati reserves all rights to limit or deny coverage based on any of the foregoing exclusions. Here, for instance, the your product exclusion precludes coverage for any "property damage" to Dale's product arising out of it or any part of it. Similarly, the your work exclusion bars coverage for "property damage" to Dale's work arising out of it or any part of it and included

in the "products-completed operations hazard". **Please let us know if any of Dale's work was performed by any subcontractor.**

The impaired property exclusion bars coverage for any "property damage" to any "impaired property" that has not been physically injured and which arises of out a defect/deficiency in Dale's work or product. Here, to the extent that the Underlying Action seeks damages for damage to "impaired property" that has not been physically injured, the impaired property exclusion may preclude any coverage.

Cincinnati reserves all rights to further deny coverage to Dale based on the above exclusions.

### 5. Exclusion – Contractors - Professional Liability

The Cincinnati Policy contains an EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY endorsement that provides:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph 3., below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with construction work you perform.

Cincinnati reserves all rights to further deny coverage to the extent precluded by the foregoing exclusion. Should you believe that this matter is covered, please provide us with

information concerning the nature of any professional or other services Dale or any other subcontractor provided in connection with this Project.

6. **Fungi Or Bacteria Exclusion**

The Cincinnati policy contains a Fungi or Bacteria Exclusion endorsement that provides the insurance does not apply to:

Fungi or Bacteria

a. "Bodily injury" or "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

   (1) Inhalation of;

   (2) Ingestion of;

   (3) Contact with;

   (4) Absorption of;

   (5) Exposure to;

   (6) Existence of; or

   (7) Presence of,

   any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

b. Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

c. Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

   (1) The existence of "fungi" or bacteria;

   (2) The prevention of "fungi" or bacteria;

      (3) The remediation of "fungi" or bacteria;

      (4) Any operation described in Paragraph A. 2. b. above;

      (5) "Your product"; or

      (6) "Your work"; or

  d. Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs A. 2. a., b. or c. above;

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product in-tended for human ingestion.

For the purposes of this endorsement, "Fungi" means "any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."

We understand that this matter involves water infiltration claims. To the extent that the Underlying Action seeks recovery of any damages relating to fungi or bacteria and excluded by the foregoing exclusion, Cincinnati reserves all rights to further deny or limit coverage.

  **C.**   **Other Insurance**

The Policy contains an "Other Insurance" provision that provides that Cincinnati's obligations under the Policy may be affected by the presence of other insurance. To the extent that Cincinnati has any obligation to provide Dale with coverage, other insurers also may have such an obligation, including, but not necessarily limited to, Dale and/or Bozzuto's other insurers as well as perhaps prior and subsequent insurers of Dale – depending on when any damages occurred.

Cincinnati's obligation, if at all, to provide coverage to Dale may be limited to Cincinnati's appropriate share. Cincinnati reserves the right to apply the terms of the Other Insurance provision appearing in the Policy to any determination that Cincinnati owes coverage to Dale. Cincinnati also reserves the right to deny coverage to the extent precluded or limited by the Other Insurance provision in the Policy.

To the extent that you have not already done so, you should promptly put on notice of the Underlying Action all other insurers providing coverage to Dale (as a Named Insured, additional insured or otherwise) for any time period at issue in the Underlying Action. Cincinnati reserves all rights to deny or limit coverage to the extent that Dale's failure to give, or delay in giving,

notice of this matter to any other insurer prejudices the availability of any other coverage that may exist.

## V. **CONCLUSION**

While Cincinnati is continuing to investigate this claim, Cincinnati has decided to offer Dale a defense in the Underlying Action, for the reasons stated above, pursuant to a full and complete reservation of rights to deny coverage under the Cincinnati Policy. At this time, it remains unclear as to the manifestation date of the water penetration issues. Also, it is premature at this time to determine if the water penetration issues arose as a result of Dale's work on the Project. Thus, to assist in our continued investigation of this matter, please provide us with the following (in addition to what is requested above):

1. Information and documents concerning all other subcontractors that worked on the Project in addition to Dale and Bozzuto.

2. Information concerning when Dale performed its work at this project and when Dale's work was completed;

3. Information concerning when any damages at issue in the Underlying Action (related to Dale's work) occurred, first occurred and manifested – and when the Owner, Bozzuto and/or Dale first learned of any such (alleged) damages;

4. Copies of any complaints, demands, letters or other information reflecting any complaints, damages and/or deficiencies related to Dale's work;

5. Copies of all insurance policies and certificates of insurance identifying any insurance that may provide coverage to Dale for the claims in the Underlying Action, including but not limited to any policy(ies) issued to Dale as a Named Insured or any policy(ies) pursuant to which Dale may be entitled to any additional insured coverage;

7. Copies of your notice/tender letters to any other subcontractors or other insurers, and the responses you receive. Please provide us with copies of all such letters and the responses thereto.

8. Copies of all documents regarding notification of the water penetration issues.

The foregoing is not intended as a waiver, modification or alteration of any of the terms, conditions, limitations, endorsements or exclusions of the Policy. Cincinnati does not waive, and shall not be estopped from asserting, any defenses available under any Policy and/or at law. Cincinnati reserves all of its rights under any Policy and at law. Cincinnati also expressly retains the ability to reserve additional rights or disclaim coverage in the future on any other grounds.

This letter is based upon information presently available to Cincinnati. Cincinnati reserves the right to supplement its coverage position for reasons based upon the terms, conditions, limitations, endorsements, and exclusions set forth in the Policy and/or available under the law. If any further investigation leads us to believe that any other provisions of the Policy either offer to fail to offer coverage or trigger a duty to defend and/or indemnify, we will advise you accordingly. Any additional investigation on the part of the Company shall not be construed as a waiver of any of the Company's rights to disclaim coverage upon other grounds, nor should it be construed as an admission of coverage by the Company.

Finally, to the extent that you disagree with Cincinnati's above statements, we would appreciate hearing the basis for any disagreement. To the extent that you possess or develop information that you believe would cause Cincinnati to alter its preliminary assessment that this matter does not appear to implicate coverage under the Cincinnati Policy issued to Dale and/or to the extent that any amended pleading is filed against Bozzuto, please provide that information to us as soon as possible.

If you feel that we are incorrect in our assessment of the coverage issues or if you have questions, comments or objections regarding the contents of this letter or desire to discuss further the content of this letter or the claim in general, please feel free to contact me.

Very Truly Yours,

*Tina Worsley*

Tina Worsley,
Senior Claims Specialist

cc:   Mark T. Riley, Esquire
      20 Freedom Business Center, Suite 300
      King of Prussia, PA 19406 West Chester, Pa 19380
      Attn: Mark T. Riley, Esquire

      AP Benefits Advisors, LLC dba BHI
      111 Ruthar Drive
      Newark, DE 19711

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."